IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 4:22-cr-082 |
| | ) | 4:22-cr-152 |
| | ) | |
| JONATHAN FRANCIS SPEIDEL, | ) | GOVERNMENT'S |
| | ) | SENTENCING |
| Defendant. | ) | MEMORANDUM |

Over the course of nearly twelve years, Defendant's entire adult life, Defendant demonstrated that he is sexually attracted to children and that he will ruthlessly exploit children to satisfy his depraved desires. During that time, Defendant engaged in multiple nonconsensual sex acts with minor females and numerous instances of statutory rape. On countless occasions, Defendant bribed, manipulated, and enticed children to produce child pornography for him, sometimes encouraging children to insert sharpies, hairbrushes, or bubble wands into their vaginas. Defendant knew that his conduct was illegal, yet he persisted. Even after being charged in Oregon for having sex with a fifteen-year-old child, Defendant returned to Oregon, drove the child to Washington to evade Oregon's statutory rape laws, and had sex with the child and used the child to capture sexually explicit content.

Sentencing is set to occur on February 24, 2023, at 11:00 a.m. At the hearing, the government will request that this Court impose a life sentence—a sentence authorized by statute, recommended by the sentencing guidelines, and justified in light of the harm Defendant has caused and the danger Defendant presents.

1

## **TABLE OF CONTENTS**

I.   Introduction ................................................................................................................. 2

II.  Defendant's Objections to the Final PSR's "Offense Conduct Statement"
     and "Offense Behavior Not Part of Relevant Conduct"
     Should Be Rejected ..................................................................................................... 6

III. The 18 U.S.C. § 3553(a) Factors Demand a Life Sentence ................................. 8

IV.  Forfeiture, Restitution, and the $100 Mandatory Assessment
     Should Be Ordered .................................................................................................... 18

V.   Conclusion .................................................................................................................. 18

**I.   INTRODUCTION**

On May 31, 2022, a criminal Complaint issued in Case Number 4:22-cr-082, charging Defendant with Transportation of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(1), (b)(1). (Dkt. No. 1).[1] Weeks later, a federal grand jury returned an Indictment charging Defendant with one count of the same crime. (Dkt. No. 19).

On July 20, 2022, Defendant was charged with twenty-eight counts in a Superseding Indictment. (Dkt. No. 32). In the Superseding Indictment:

- Counts 1, 3, 8, 24, and 27 charged Defendant with Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2) and 2252A(b)(1);

- Counts 2, 9, 10, 14, 16, 20, 22, and 25 charged Defendant with Enticement and Attempted Enticement of a Minor, in violation of 18 U.S.C. § 2422(b);

- Counts 4, 6, 12, 15, and 17-19 charged Defendant with Sexual Exploitation and Attempted Sexual Exploitation of a Child, in violation of 18 U.S.C. § 2251(a), (e);

---

[1] Unless otherwise indicated, docket citations contained herein (*i.e.*, "Dkt. No.") refer to the docket numbers in Case Number 4:22-cr-082.

- Counts 5, 21, 23, and 26 charged Defendant with Transportation of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(1) and 2252A(b)(1);

- Counts 7, 11, and 13 charged Defendant with Transfer and Attempted Transfer of Obscene Material to a Minor, in violation of 18 U.S.C. § 1470; and

- Count 28 charged Defendant with Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and 2252A(b)(2).

(*Id.*). The Superseding Indictment also included a notice of forfeiture, requiring Defendant to forfeit, upon conviction, any child pornography and any property used to commit the charged offenses, including, but not limited to, the devices listed in Count 28 of the Superseding Indictment. (*Id.*).

On October 18, 2022, a U.S. Attorney's Information issued in Case Number 4:22-cr-152, charging Defendant with one count of Travel with Intent to Engage in Illicit Sexual Activity, in violation of 18 U.S.C. § 2423(b). (*United States v. Speidel*, 4:22-cr-152, Dkt. No. 3 (S.D. Iowa Oct. 18, 2022)).

Defendant entered a plea agreement by which he admitted his guilt to Counts 6, 14, and 28 of the Superseding Indictment in Case Number 4:22-cr-082, and to the forfeiture of the property identified in the Superseding Indictment. (Dkt. No. 40). Defendant also waived indictment and pleaded guilty to Count 1 of the Information in Case Number 4:22-cr-152. (*Id.*). In exchange, the government agreed to dismiss Counts 1-5, 7-13, and 15-27 of the Superseding Indictment. (*Id.*).

A change-of-plea hearing was held on October 18, 2022. (Dkt. No. 41). A United States Magistrate Judge (i) recommended that Defendant's guilty pleas be accepted and that Defendant be adjudged guilty, and (ii) advised Defendant of the forfeiture of

the property identified in the Superseding Indictment. (Dkt. No. 41, 43). This Court subsequently adopted the recommendation. (Dkt. No. 47).

A draft presentence investigation report (PSR) was filed on December 16, 2022. (Dkt. No. 51). The government had one objection to the draft PSR's guidelines calculations but conceded that the objection would not impact the applicable advisory guidelines range—life in prison. (Dkt. No. 56). Defendant lodged several objections to the draft PSR, none of which affect the advisory guidelines range. (Dkt. No. 55). A final PSR was filed on February 15, 2023. (Dkt. No. 59). The final PSR calculates Defendant's advisory guidelines range as:

**Count 6 Offense Level (Child Victim #3)**

| | |
|---|---|
| Base Offense Level (USSG §2G2.1(a)) | 32 |
| Minor 12-16 years (USSG §2G2.1(b)(1)(B)) | +2 |
| Sexual Act/Contact (USSG §2G2.1(b)(2)(A)) | +2 |
| Sadistic/Masochistic (USSG §2G2.1(b)(4)) | +4 |
| Computer to Entice (USSG §2G2.1(b)(6)) | +2 |
| Group Offense Level | 42 |

**Count 14 Offense Level (Child Victim #7)**

| | |
|---|---|
| Base Offense Level (USSG §2G1.3(a)(3)) | 28 |
| Computer to Entice (USSG §2G1.3(b)(3)) | +2 |
| Minor Under 12 (USSG §2G1.3(b)(5)) | +8 |
| Undue Influence (USSG §2G1.3(b)(2)(B)) | +2 |
| Group Offense Level | 40 |

**Count 28 Offense Level**

| | |
|---|---|
| Base Offense Level (USSG §2G2.2(a)(1)) | 18 |
| Minor Under 12 (USSG §2G2.2(b)(2)) | +2 |
| Distribution to Minor to Entice (USSG §2G2.2(b)(3)(E)) | +7 |
| Sadistic/Masochistic/Infant (USSG §2G2.2(b)(4)) | +4 |
| Pattern (USSG §2G2.2(b)(5)) | +5 |
| Use of a Computer (USSG §2G2.2(b)(6)) | +2 |
| 600+ images (USSG §2G2.2(b)(7)(D)) | +5 |
| Group Offense Level | 43 |

**Count 1 of Information Offense Level (Child Victim #18)**

| | |
|---|---|
| Base Offense Level (cross-ref. USSG §2G2.1(a)) | 32 |
| Sexual Act/Contact (USSG §2G2.1(b)(2)(A)) | +2 |
| Sadistic/Masochistic (USSG §2G2.1(b)(4)) | +4 |
| Computer to Entice (USSG §2G2.1(b)(6)) | +2 |
| Group Offense Level | 40 |

| | |
|---|---|
| **Greatest Group Offense Level** | 43 |
| **Adjustment for Grouping** (USSG §3D1.4) | +4 (based on 4.0 units) |
| **Pattern Enhancement** (USSG §4B1.5(b)(1)) | +5 |
| **Acceptance of Responsibility** (USSG §3E1.1) | -3 |
| **Total Offense Level** | **49 (treated as 43)** |
| **Criminal History Category** | **I** |
| **Advisory Guidelines Range** | **Life Imprisonment** |

(Dkt. No. 59, at 27-32, 54, 60, ¶¶ 117-61, 258, 299).

Three issues remain for this Court to resolve at sentencing: (1) Defendant's objections to facts in the final PSR, (2) the determination of forfeiture, restitution, and other financial assessments, and (3) the term of imprisonment to be imposed.

5

## II. DEFENDANT'S OBJECTIONS TO THE FINAL PSR'S "OFFENSE CONDUCT STATEMENT" AND "OFFENSE BEHAVIOR NOT PART OF RELEVANT CONDUCT" SHOULD BE REJECTED

Defendant submits several objections to the information contained in the final PSR's "Offense Conduct Statement" and "Offense Behavior Not Part of Relevant Conduct." (Dkt. No. 55). Although the objections have no effect on the applicable advisory guidelines range, the government addresses these objections to clarify the record for purposes of this Court considering the information pursuant to 18 U.S.C. § 3553(a). To respond to Defendant's objections and to provide this Court with other information relevant to § 3553(a), the government offers Exhibits 1-8.

Defendant presents five objections to information in the PSR concerning Child Victim #18, noting that he "does not recall" certain facts contained in the final PSR. (Dkt. No. 55, at 1, ¶¶ 1-5). Child Victim #18 testified under oath about the items to which Defendant objects. Her testimony establishes the following and rebuts Defendant's objections:

- When Child Victim #18 performed oral sex on Defendant in a Taco Bell parking lot, Defendant pushed Child Victim #18's head down with both of his hands. Child Victim #18 could not breathe, so she "pinch[ed] or pull[ed] at [Defendant's] leg to let him know that [she] couldn't handle it." Defendant continued until ultimately Child Victim #18 vomited, at which point, Defendant said that Child Victim #18 "had to keep going." (Gov. Ex. 4, at 17-18; Dkt. No. 55, at 1, ¶ 1).

- Prior to having sex with Child Victim #18 near a park restroom, Defendant told Child Victim #18 that he "wanted to have sex in a place where he knew it was wrong, or in a place where people could potentially see or where kids would go." (Gov. Ex. 4, at 18-19; Dkt. No. 55, at 1, ¶ 2).

- Child Victim #18 explained that "[e]very time" Defendant had some form of sex with her, Defendant would have Child Victim #18 (i) remind him how old she was and how much older he was than her, (ii) "count on [her] fingers just how many years older he was" compared to Child Victim #18, and (iii) tell her "that

he was almost old enough to be [Child Victim #18's] father." (Gov. Ex. 4, at 23; Dkt. No. 55, at 1, ¶ 3).

- One time, when Defendant was in Iowa and Child Victim #18 was in Oregon, Defendant and Child Victim #18 were communicating over video chat. During the chat, Defendant showed Child Victim #18 child pornography involving an older man with a Child Victim #18 believed to be six or seven years old. As Defendant displayed the video to Child Victim #18, Defendant said that he wished the video depicted him and Child Victim #18 (Gov. Ex. 4, at 29-31; Dkt. No. 55, at 1, ¶ 4).

- After Defendant returned to Iowa, Child Victim #18 informed Defendant that she had a boyfriend. Defendant responded by, among other things, asking Child Victim #18 to record videos of her and her boyfriend "doing sexual things" and to send the video to Defendant. Child Victim #18 explained that she sent Defendant via Snapchat a video or image of her and her boyfriend engaged in sexual activity. (Gov. Ex. 4, at 28-29; Dkt. No. 55, at 1, ¶ 5; Dkt. No. 40, at 22 (Defendant admitting in plea agreement that he would "often request" that his victims record themselves engaged in sexually explicit conduct with their "romantic partner[s]" or "with other individuals")).

Defendant, next, challenges the characterization in the PSR that he "raped" Child Victim #1. His point seems to be that although he committed "statutory rape" by having a sexual relationship with Child Victim #1, he never engaged in nonconsensual sex with Child Victim #1. (Dkt. No. 55, at 2, ¶ 8).

But sworn testimony from Child Victim #1 undercuts Defendant's assertion. Child Victim #1 testified under oath that she told Defendant before meeting him in person for the first time that she "was not interested in any sexual activity." (Gov. Ex. 1, at 7). Notwithstanding Child Victim #1's statements, on the night he first met Child Victim #1, Defendant picked Child Victim #1 up in a vehicle, isolated her, and "raped" her. (*Id.* at 7-9). Like Defendant, Child Victim #1 admitted that she later engaged in a consensual sexual relationship with Defendant. (*See id.* at 13). Child Victim #1 described their first encounter, however, as "rape[]." (*Id.* at 8-9).

7

Defendant also does not recall showing Child Victim #1 images of other girls that he had saved on electronic devices. (Dkt. No. 55, at 2, ¶ 9). Child Victim #1 explained, though, that (i) she knew that Defendant used his phone and computer to talk with other girls and to arrange meetings with them, and (ii) Defendant showed Child Victim #1 "on his computer" images he had saved similar to the sexually explicit materials Child Victim #1 had sent Defendant previously. Child Victim #1 described the girls with whom Defendant was communicating as minors younger than 17 or 18. (Gov. Ex. 1, at 13-14).

Finally, Defendant objects because he is not sure what the final PSR describes as his efforts to "guilt trip" victim L.L. into sending him sexually explicit material. (Dkt. No. 55, at 2, ¶ 10). L.L. testified under oath that Defendant "would guilt trip [her] into sending him" sexually explicit images, stating, as an example, that Defendant once told her "Well, last week you said you would [send the requested material], so why wouldn't you now." (Gov. Ex. 2, at 11, 14). Additional examples are contained in Exhibit 5, which contains Defendant's 2022 Snapchat communications with L.L. Although L.L. was an adult in 2022, she said that the communications are similar to the ones she shared with Defendant when she was fourteen to eighteen years old. (Gov. Ex. 2, at 13-14; Gov. Ex. 5, msg. 1240-42, 1257-70).

### III.   THE 18 U.S.C. § 3553 FACTORS DEMAND A LIFE SENTENCE

Based on the 18 U.S.C. § 3553(a) sentencing factors, this Court should impose a life term of imprisonment, a sentence authorized by statute and consistent with the advisory guidelines range. In no event should this Court impose a term of

imprisonment less than 45 years, a sentence that would ensure Defendant remains imprisoned until he is roughly seventy years old.

The appropriate sentence to be imposed by this Court should be "sufficient but not greater than necessary" to meet relevant sentencing objectives, which include:

1) The nature and circumstances of the offense and the history and characteristics of the defendant;

2) The need for the sentence imposed—

    a. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    b. To afford adequate deterrence to criminal conduct;

    c. To protect the public from further crimes of the defendant; and

    d. To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3) The kinds of sentences available;

4) The kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission;

5) Any pertinent policy statement issued by the Sentencing Commission;

6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7) The need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The foregoing sentencing factors support a life sentence. Defendant has, for more than a decade, targeted children to satisfy his sexual desires; he exploited those children, engaging in sex acts with them and producing child pornography; he used those children to find still more children to victimize; and despite knowing full well

that his conduct was illegal, Defendant continued exploiting children. Defendant is a threat to society. A life sentence is needed to protect the public, account for the extreme nature of Defendant's conduct, and provide just punishment for the harm Defendant has caused.

### *Defendant's "history" is one of exploiting children for sexually explicit content*

For over a decade, Defendant targeted and exploited children to create and send him child pornography. Defendant sought out "prepubescent or pubescent" females. (Gov. Ex. 1, at 14; Dkt. No. 59, at 50, ¶ 226). He attempted to produce child pornography of children as young as approximately seven years old. (*See, e.g.*, Dkt. No. 59, at 15-16, 22-23, ¶¶ 55, 58, 92-99; Gov. Ex. 4, at 43-44). Defendant "wanted to corrupt the minors," "brainwash" them; he "wanted the girls to feel like he was the only thing they had," "for the girls to crave him." (Dkt. No. 59, at 13, ¶ 46; *see, e.g.*, Gov. Ex. 8, msg. 43 ("Can you corrupt her.")).

Defendant specifically targeted "vulnerable, traumatized minor females." (Dkt. No. 59, at 20, ¶ 81-84). One child told Defendant that she had tried to commit suicide; another discussed suicide with him; and Defendant knew several children he communicated with had been the victim of prior sexual abuse. (*See, e.g.*, *id.* at 10, 20, ¶¶ 23, 81-84; Gov. Ex. 4, at 13; Dkt. No. 40, at 21, ¶ 4(i)). Defendant sometimes offered support or advice to the children to put them at ease. (Dkt. No. 40, at 21, ¶ 4(i); Dkt. No. 59, at 10, ¶¶ 23).

Defendant employed a variety of methods to manipulate the children into engaging in sexually explicit conduct and producing child pornography. Usually,

Defendant communicated with the children on various social media applications. He lied about his age, identity, his job, about being in college or being a sugar daddy, about looking for models. He sent children masturbation videos or child pornography, and he informed children about other minors providing him with content. He told children about the sex acts he wanted to perform with them and offered to teach children how to perform various sex acts, or "yuckies" as he called them. He rationalized his behavior, telling children it was normal for men to be attracted to younger girls. He paid children in exchange for illicit content—he told one victim in early 2022 that he had spent $2000 in the preceding three-week period to obtain illicit content. (*See, e.g.*, Dkt. No. 59, at 9-11, 13-14, 19-20, 22, ¶¶ 17, 23-24, 46-47, 76, 92-99, 212; Gov. Ex. 6, at 2).

Defendant also used "coercion and pressure" to cause minors to produce child pornography for him. (Gov. Ex. 1, at 10-11, 14-15; Gov. Ex. 2, at 11). Or Defendant "overloaded the [minors with] compliments" and used "forms of charm, flattery, [and] wit." (Gov. Ex. 1, at 14-15; Dkt. No. 59, at 10, ¶ 23(d)).

Multiple victims stated that Defendant's behavior made them feel "wanted," and that "it was nice just to have that attention." (Gov. Ex. 2, at 10; *see, e.g.*, Gov. Ex. 3, at 9; Gov. Ex. 4, at 24; Dkt. No. 59, at 51-52, ¶¶ 232, 239). One victim even paid Defendant so that he would meet with her. (Gov. Ex. 4, at 20-21; Dkt. No. 59, at 11, ¶ 28).

Through Defendant's efforts, he was able to persuade numerous children to produce and send him child pornography. With some victims, Defendant exchanged hundreds of messages and repeatedly requested child pornography. Often, Defendant

suggested to the children that they create content depicting them masturbating with inanimate objects like hairbrushes, sharpies, bubble wands, or a curling iron. On occasion, he asked children to capture content of them urinating or engaging in sex acts with other people. (*See, e.g.*, Dkt. No. 59, at 11, 13, 20-21, 32-48, 50-54, ¶¶ 24-25, 41-45, 77-79, 88, 163-214, 221-22, 230, 239, 248, 251-53; Gov. Ex. 6, p. 1)

Defendant has admitted that his conduct harmed over twenty individuals, with whom he produced, requested, and/or received child pornography. (*See* Dkt. No. 40, at 20, ¶ 3(a)). That figure does not account for the hundreds of children depicted in Defendant's collection of child pornography. (Dkt. No. 59, at 24-25, ¶ 112).

Defendant's actions demonstrate his obvious attraction to minor females and the danger he presents to society. Since 2009, Defendant collected child pornography. (Dkt. No. 59, at 16-17, ¶ 63). He used Snapchat accounts to exchange the content with others, one time stating in a group chat with the apparent purpose of trading child pornography, "If anyone wants to post I got more to match." (*See, e.g.*, *id.* at 17-18, ¶¶ 66-67, 74-75). And Defendant took apparent satisfaction in the fact that the children he interacted with were young. Among other things, Defendant:

- Had children call him "dad" or "daddy" and referred to children as his "daughter," (*See, e.g.*, Dkt. No. 59, at 12, 15, 37-38, ¶¶ 36(a), 56, 182(c); Gov. Ex. 2, at 10; Gov. Ex. 3, at 9; Gov. Ex. 4, at 42-43);

- Told Child Victim #3 that he wanted to feel her "14yr old pussy" and see a "9th graders mouth fill up w[ith] my cum," (Dkt. No. 59, at 21, ¶ 87);

- Asked Child Victim #2 if she "could frrr take my adult dick[]," (*id.* at 33, ¶ 164(b);

- Said to Child Victim #8 that he wanted "to feel how tight HS pussy is[]," (*Id.* at 37-38, ¶ 182(c)); and

12

- "[R]egularly brought up" one victim's "age and race" and "talked a lot about the fact that [the child] was in eighth grade," (*id.* at 53, ¶ 247).

### *Defendant has engaged in sex acts with multiple children*

Apparently unsatisfied with merely producing and collecting child pornography, Defendant suggested to children that they meet in person. (Dkt. No. 59, at 19, ¶ 76(j)). For instance, in April 2022, Defendant suggested to two Snapchat users he understood to be approximately fourteen years old that he travel to Florida to see them in person. (*See* Gov. Ex. 8, p. 5). Defendant stated to one user "Wo[u]ld you ever let a guy in his 20s touch? . . . . I'd easy fly down there for youuu. Ur gonna be a model when ur older fss." (Gov. Ex. 7, msg. 98, 100). He told the second user, "I wanna come to FL!" (Gov. Ex. 8, msg. 148).

Defendant was, in fact, able to engage in sex acts constituting statutory rape with at least five children. (Dkt. No. 59, at 9-10, 14, 49-53, ¶¶ 20, 28-29, 51, 218, 221, 223, 236, 240, 245-48). Defendant had months- or even years-long sexual relationships with four of those children. (*Id.*).

Defendant also caused Child Victim #1 and Child Victim #18 to engage in nonconsensual sex acts. Child Victim #1 described her first encounter with Defendant as "rape[]." (Gov. Ex. 1, at 8-9; Dkt. No. 59, at 49, ¶ 218). Child Victim #18 recalled the following events:

- One time, at a construction site, Child Victim #18 told Defendant she did not want to engage in anal sex, and Defendant did it anyways, telling Child Victim #18 "good job" when he was finished. (*Id.* at 9-10, ¶ 20).

- That same day, Defendant pushed Child Victim #18's mouth towards his anus as Child Victim #18 was telling Defendant "No." (*Id.*).

- Twice, on separate occasions, when Child Victim #18 performed oral sex on Defendant, Defendant forced Child Victim #18's head down in a manner that restricted Child Victim #18's breathing. Both times, Child Victim #18 pinched and pulled at Defendant get him to stop. During one such episode, Child Victim #18 vomited in response to Defendant's actions. (*Id.* at 9-10, 14, ¶¶ 20, 51).

- In a hotel room in Washington, Defendant wanted to have anal sex with Child Victim #18, and Child Victim #18 did not. Defendant had anal sex with Child Victim #18 anyways. Beforehand, Defendant commented that "he was her only way home." (*Id.* at 14, ¶ 51).

- Also at the hotel, Defendant told Child Victim #18 to sit on the floor and open her mouth. Defendant then urinated on Child Victim #18 and told her to swallow. She refused. (*Id.*).

(*See, e.g.*, Gov. Ex. 4, at 16-18, 37-39).

### *Defendant used children to find even more children to victimize*

Once Defendant had succeeded in manipulating a minor female, he sometimes used that child to find other children to produce child pornography. For example:

- In one conversation with Child Victim #18, Defendant asked to see images of Child Victim #18's "younger friend." After Child Victim #18 sent Defendant three images, Defendant stated, "Yeah, I'd molest her." (Dkt. No. 59, at 12, ¶ 36(a)).

- On another occasion, Defendant knew that Child Victim #18 was babysitting her roughly seven-year-old cousin. Defendant instructed Child Victim #18 to "initiate a dress-up party so that way [Child Victim #18] could take photos of her [cousin] getting undressed and getting dressed." (Gov. Ex. 4, at 43-44; Dkt. No. 59, at 15, ¶ 55).

- Child Victim #8 introduced Defendant to a friend. Child Victim #8 told her friend that Defendant was paying her in exchange for illicit pictures. Defendant went on to purchase sexually explicit content from the friend, including a video of the friend inserting a sharpie in her vagina. Defendant also requested a "girl-on-girl" video from Child Victim #8 and her friend and asked whether the children would "ever get w[ith] an older guy." (Dkt. No. 59, at 38-39, ¶¶ 183-86).

Even after Defendant had been charged with crimes in Oregon and a search warrant had been executed at his residence in Iowa, he continued to solicit illicit

material from children and encouraged them to convince others to communicate with him. Exhibits 7 and 8 contain Defendant's April 2022 communications with two Snapchat users, "Sofia" and "Ava." From the conversations, Defendant first spoke with Sofia, who then introduced Defendant to Ava, who apparently was just fourteen years old. (*See* Gov. Ex. 8, msg. 156-58). Defendant requested "nudes" and content showing the girls masturbating with objects or their fingers, and based on Defendant's comments, the girls sent Defendant the requested material. (*E.g.*, Gov. Ex. 7, pp. 1-6; Gov. Ex. 8, pp. 1-4). During the communications with both Sofia and Ava, Defendant tried to convince the girls to connect him with another child, "Allie." Ava explained that Allie would not take or sell illicit pictures. Defendant responded "Really haha," "Can you corrupt her," "let's try to… I love skinny beach shawtys w[ith] cute anklettes." (Gov. Ex. 8, msg 40-46; Gov. Ex. 7, msg. 238-46).

### *Defendant knew his conduct was illegal, but kept exploiting children and tried to conceal his conduct*

Defendant understood his actions with minors were illegal. (*See, e.g.*, Dkt. No. 59, at 41-42, ¶ 191 ("[Y]ou realize its illegal for me right?")). Indeed, he stated that the illegality was "why it feels so good." (Dkt. No. 59, at 23, ¶¶ 100-03). Defendant made similar comments to one of his statutory-rape victims, saying "You know about the only crime I participate in. . . . We did partake in it, at one point." (*Id.* at 52, ¶¶ 242-43).

Despite knowing his conduct was against the law, Defendant did not understand that his conduct was "morally wrong," and he continued to exploit children and attempt to keep his behavior secret. (Gov. Ex. 4, at 32; Dkt. No. 59, at 19,

15

¶ 75 (noting Defendant used a second Snapchat account to contact minor females after another account was deactivated)).

In 2018 and 2019, prior to being charged with crimes in Oregon, Defendant told Child Victim #18 "not to tell anyone about their relationship," because he could get in trouble. (Dkt. No. 59, at 11, ¶ 26). On the night law enforcement found Defendant with Child Victim #18 after Defendant had sex with her, Defendant instructed Child Victim #18 to give the police a fake name and tell them that Defendant and Child Victim #18 were cousins. (*Id.* at 11-12, ¶¶ 30-32; Gov. Ex. 4, at 21-22). For his part, Defendant lied to the officers, telling them that "he and [Child Victim #18] were cousins who were hanging out in the park." (Dkt. No. 59, at 12, ¶ 33). After being confronted about the falsity of that statement, Defendant then changed his story and told police he and Child Victim #18 "were friends." (*Id.* at 12, ¶¶ 33-34).

After he was charged for having sex with Child Victim #18 in August 2019, Defendant fled to Iowa and a warrant was issued in Oregon for his arrest. (Dkt. No. 59, at 13, 55, ¶¶ 39, 260). From Iowa, Defendant continued to direct Child Victim #18 "to defend him [against the Oregon charges] and to notify the authorities that [he] believed [Child Victim #18] was eighteen." (*Id.* at 13, ¶ 42; *see id.* at 14, ¶ 52)). He, further, commented "that he hoped the justice system had not caused [Child Victim #18] to think he was a bad person." (*Id.* at 14, ¶ 48; *see, e.g.*, Gov. Ex. 4, at 24-25).

To top it off, while in Iowa, Defendant remained in "daily" contact with Child Victim #18. He continued requesting and receiving sexually explicit content from

Child Victim #18 (Dkt. No. 59, at 13, ¶¶ 41, 43-46). And during their conversations, Defendant showed Child Victim #18 content he had received from other children. (*Id.*; Gov. Ex. 4, at 26-31).

Taking it even further, Defendant planned a trip back to Oregon for the purpose of engaging in sex acts and producing child pornography with Child Victim #18. (Dkt. No. 59, at 14, ¶¶ 48-50). Of course, Defendant could not have sex with Child Victim #18 in Oregon—that would be against the law. So, Defendant picked Child Victim #18 up in Oregon, took Child Victim #18 to a hotel in Washington, engaged in various sex acts with her there, and produced child pornography with Child Victim #18. (*Id.* at 14, ¶¶ 49-51; Gov. Ex. 4, at 33-40).

Even after law enforcement executed a search warrant at Defendant's residence in March 2022, Defendant persisted in his efforts to exploit children. (*See, e.g.*, Gov. Ex. 6-8; Dkt. No. 59, at 23, ¶ 105).

\*   \*   \*

Put simply, a life sentence is recommended by the advisory sentencing guidelines and is supported by the relevant sentencing factors. A life sentence accounts for the depravity and callousness of Defendant's conduct, the danger he presents to society, and the need to deter Defendant and others from engaging in similar activity. It also reflects the substantial and long-lasting trauma and harm Defendant has wrought on numerous children.

17

## IV. FORFEITURE, RESTITUTION, AND THE $100 MANDATORY ASSESSMENT SHOULD BE ORDERED

In his plea agreement, Defendant agreed (a) to forfeit all property he used to commit his crimes, including the five devices listed in the Superseding Indictment, (b) to pay restitution for the full amount of each victim's losses, (c) that he was subject to a mandatory $100 assessment, and (d) that he would be ordered to pay additional mandatory assessments unless he established his indigency. (*See* Dkt. No. 40, at 11-13); 18 U.S.C. §§ 2259A, 3014. There should be no dispute regarding the forfeiture and $100 assessment; in fact, as to the forfeiture, this Court has already issued its preliminary order. (Dkt. No. 44).

On the matter of restitution: As of the date of this filing, the government has received eight requests for restitution. (*See* Dkt. No. 59, at 25-27, ¶¶ 113-14). Based on the information received, at sentencing, the government will request that Defendant pay $3000 restitution to each victim.

Lastly, the government concedes that Defendant is indigent for purposes of the mandatory $5000 special assessment in 18 U.S.C. § 3014. Defendant has no assets or liabilities; he will likely owe more than $20,000 in restitution to the victims of his crimes; and he is facing a life sentence. It is unlikely Defendant will be able to satisfy the $5000 assessment in addition to serving a lengthy prison term and paying restitution.

## V. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court adopt the advisory guidelines range in the final PSR, impose a life sentence

(or, at minimum, a sentence of at least 45 years), and order forfeiture, restitution, and the mandatory $100 assessment.

                                                Respectfully submitted,

                                                Richard D. Westphal
                                                United States Attorney

                                        By: */s/ Kyle J. Essley*
                                                Kyle J. Essley
                                                Assistant United States Attorney
                                                U. S. Courthouse Annex, Suite 286
                                                110 East Court Avenue
                                                Des Moines, Iowa 50309
                                                Tel: (515) 473-9300
                                                Fax: (515) 473-9292
                                                Email: Kyle.Essley@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2023, I electronically filed the foregoing with the Clerk of Court using the CM ECF system. I hereby certify that a copy of this document was served on the parties or attorneys of record by:

      U.S. Mail        Fax        Hand Delivery

 X  ECF/Electronic filing      Other means

UNITED STATES ATTORNEY

By: /s/ *Alisha Rankin*
       Paralegal Specialist