```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF IOWA
 2                         CENTRAL DIVISION
 3   _____
                                  )
     UNITED STATES OF AMERICA,     )
 4                                 )    CASE NOS. 4:22-cr-082
              Plaintiff,           )              4:22-cr-152
 5                                 )
         vs.                       )
 6                                 )    TRANSCRIPT OF
                                   )    SENTENCING PROCEEDINGS
 7   JONATHAN FRANCIS SPEIDEL,     )
                                   )
 8            Defendant.           )
 9   _____

                                       COURTROOM 160, FIRST FLOOR
10                                     U.S. COURTHOUSE
                                       123 East Walnut Street
11                                     Des Moines, Iowa 50309
                                       Friday, February 24, 2023
12                                     12:10 p.m.

13

14   BEFORE:  THE HONORABLE REBECCA GOODGAME EBINGER, DISTRICT JUDGE

15   APPEARANCES:

16   For the Plaintiff:            KYLE ESSLEY
                                   United States Attorney's Office
17                                 U.S. Courthouse Annex
                                   110 East Court Avenue, Suite 286
18                                 Des Moines, IA 50309

19
     For the Defendant:            JOSEPH HERROLD
20                                 Federal Public Defender's Office
                                   400 Locust Street, Suite 340
21                                 Des Moines, IA 50309

22

23
                     Chelsey Wheeler, CSR, RPR, FCRR
24                      United States Courthouse
                        123 East Walnut Street
25                       Des Moines, IA 50309
```

| | | | EXHIBITS | |
|---|---|---|---|---|

GOVERNMENT'S EXHIBITS

| | | | OFFERED | RECEIVED |
|---|---|---|---|---|
| 1 | Sealed Exhibit | | 11 | 11 |
| 2 | Sealed Exhibit | | 11 | 11 |
| 3 | Sealed Exhibit | | 11 | 11 |
| 4 | Sealed Exhibit | | 11 | 11 |
| 5 | Sealed Exhibit | | 11 | 11 |
| 6 | Sealed Exhibit | | 11 | 11 |
| 7 | Sealed Exhibit | | 11 | 11 |
| 8 | Sealed Exhibit | | 11 | 11 |

1                    P R O C E E D I N G S

2              (In open court with the defendant present.)

3              THE COURT:  Thank you.  Please be seated.

4              We are here in the matter of the United States of

5    America versus Jonathan Francis Speidel or Speidel?

6              THE DEFENDANT:  Speidel.

7              THE COURT:  Speidel?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  These are Case Nos. 4:22-cr-082 and

10   4:22-cr-152.  This is the time and date set for sentencing in

11   this matter.  My name, as you know, is Rebecca Goodgame

12   Ebinger, and I'm the district judge presiding.

13              If counsel would please identify themselves for

14   purposes of the record.

15              MR. ESSLEY:  Thank you, Your Honor.  Kyle Essley on

16   behalf of the United States, and I'm joined here today by

17   Special Agent Hai Tran of the Department of Criminal

18   Investigation.

19              THE COURT:  Thank you.

20              MR. HERROLD:  Joseph Herrold on behalf of the

21   defendant, Your Honor.

22              THE COURT:  Thank you.

23              We are here in the United States District Court for

24   the Southern District of Iowa.  The defendant is personally

25   present, and we have with us from the United States Probation

1   Office U.S. Probation Officer Catherine Hollinrake, who is the

2   author of the presentence investigation report.

3        The Court has allowed a victim representative to

4   appear or to view the proceedings remotely.  Originally we had

5   arranged for the United States Courthouse in Portland to be

6   available for victim participation remotely.  The United States

7   District Court for Portland is closed today or is not available

8   because of weather, and in light of that, we have allowed

9   remote participation via Zoom from that single location.

10       Before we begin, I am going to just talk with you,

11  Mr. Speidel, about the charges in this case initially, but I

12  wanted to touch base with the parties about an outstanding

13  issue that I got an email about yesterday.

14       Mr. Essley, you had sent an email in regards to

15  restitution.  My understanding from the plea agreement is that

16  the parties have agreed that restitution is in order.  There's

17  a minimum that has been agreed to per victim.  There have been

18  some late submissions, and my understanding is that you're

19  requesting for the Court not to address restitution today and

20  to hold that matter open for 60 days.

21       Is that the Government's request?

22       MR. ESSLEY:  That is correct, Your Honor, with one

23  caveat.  The initial eight restitution requests that were

24  received prior to today, the parties have agreed, as the

25  defendant stated in his sentencing memorandum, that the

1   appropriate amount for those eight victims in restitution is

2   $3,000.  And if the Court wishes to go ahead and order

3   restitution for those eight victims, those victims being Sweet

4   White Sugar, Jenny, Tara, Cindy, Angela, Aprilblonde, JB [sic]

5   Flowers1, and JB [sic] Flowers2, that the parties would agree

6   that that would be appropriate at this time.  But if the Court

7   wishes to delay awarding any restitution until all 12 of the

8   series can be addressed, that would also be appropriate.

9        THE COURT:  Mr. Herrold, would you like to be heard?

10        MR. HERROLD:  I agree with what Mr. Essley said,

11   including that if the Court wants to go forward with and agrees

12   with our recommendation on the minimum amount for the

13   previously known requesting restitution victims, I don't object

14   to having, within 60 days, a follow-up hearing.

15        As noted, we just received these requests last night,

16   and we just need some time to do our due diligence to make sure

17   that if we can come up with a joint recommendation to the Court

18   on what we think is an appropriate restitution amount on those

19   as well, that we comply with what the law asks us to do on

20   that.  We will certainly try to do that, as we have done in

21   other cases, Your Honor.

22        THE COURT:  So part of this is figuring out what boxes

23   I check on a form, and that isn't to minimize the importance of

24   this decision, but I have an option of deferring restitution,

25   and then I have an option of making restitution.  It would be

1    my suggestion that I check both of those boxes and that I order

2    the restitution that is currently agreed upon, that I then

3    indicate in the commentary in the Statement of Reasons that

4    partial restitution is ordered, indicating that there will be a

5    subsequent order of restitution consistent with the

6    continuation indicated on page 8 of the judgment.

7            Any objection to proceeding in that way?

8            MR. ESSLEY:  No, Your Honor.

9            MR. HERROLD:  No, Your Honor.

10           THE COURT:  Okay.  All right.  Thank you.

11           Mr. Speidel, do you recall being charged by way of a

12    complaint that was filed back on May 31 of 2022 initially with

13    a single count of transportation of child pornography, in

14    violation of Title 18, United States Code, Sections 2252A(a)(1)

15    and 2252A(b)(1)?

16           THE DEFENDANT:  Yes, Your Honor.

17           THE COURT:  You were subsequently indicted in -- I

18    think it was in June, and then in July a superseding indictment

19    was filed alleging 28 counts.

20           Do you recall that, sir?

21           THE DEFENDANT:  Yes, Your Honor.

22           THE COURT:  There were five counts of receipt of child

23    pornography, eight counts of enticement or attempted enticement

24    of a minor, seven counts of sexual exploitation or attempted

25    sexual exploitation of a child, four counts of transportation

1  of child pornography, three counts of transfer of obscene

2  material or attempted transfer of obscene material to a child,

3  and a single count of possession of child pornography

4  comprising those 28 counts.

5          Do you recall that?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  You initially entered pleas of not guilty

8  to all of those charges.  Subsequently, an Information was

9  filed in Case No. 4:22-cr-152.  In that case there was a single

10  count alleged of travel with intent to engage in illicit sexual

11  activity, and at the time that Information was filed with your

12  consent, you entered a plea of guilty to that charge.

13          Do you recall that, sir?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  As part of your plea agreement with the

16  Government, they have agreed to dismiss, at the conclusion of

17  today's hearing, all of the counts other than Count 6, which is

18  a violation of Title 18, United States Code, Section 2251(a)

19  and 2251(e); Count 18, which is enticement or attempted

20  enticement of a minor, which is a violation of Title 18, United

21  States Code, Section 2422(b); Count 28 of the original

22  indictment -- or superseding indictment, which is a violation

23  of Title 18, United States Code, Sections 2252A(a)(5)(B) and

24  2252A(b)(2); and then Count 1 of that Information that we

25  already talked about which is that travel with intent to engage

1 in illicit sexual activity, which is a violation of Title 18,

2 United States Code, Section 2423(b).

3 Do you recall that, sir?

4 THE DEFENDANT: Yes, I do, Your Honor.

5 THE COURT: You entered a plea of guilty in front of a

6 United States Magistrate Judge back on October 18 of last year.

7 The magistrate judge recommended to me that I accept your plea

8 of guilty and adjudicate you guilty, and I did so on November 7

9 of last year.

10 The magistrate judge at that hearing explained to you

11 the penalties associated with each of the crimes to which you

12 pleaded guilty, the first being five to 30 years of

13 imprisonment for Count 6; the next being ten years to life on

14 Count 14; on Count 28, not more than 20 years of imprisonment;

15 and on Count 1 of the Information, not more than 30 years of

16 imprisonment, with each of those sentences to be able to be

17 served concurrently or consecutively.

18 Do you recall that, sir?

19 THE DEFENDANT: Yes, I do, Your Honor.

20 THE COURT: Do you continue to acknowledge that you

21 are, indeed, guilty of the crimes to which you pleaded guilty,

22 sexual exploitation and attempted sexual exploitation of a

23 child, enticement and attempted enticement of a minor,

24 possession of child pornography, and travel with intent to

25 engage in illicit sexual activity, as alleged in the

1    superseding indictment and in the Information?

2           THE DEFENDANT:  Yes, Your Honor.

3           THE COURT:  Before I proceed further with the hearing,

4    I need to confirm that you're fully able to participate here

5    today.

6           Are you currently under the influence of alcohol?

7           THE DEFENDANT:  No.

8           THE COURT:  Are you under the influence of any illegal

9    substances?

10          THE DEFENDANT:  No, Your Honor.

11          THE COURT:  Are you taking any prescription

12   medications?

13          THE DEFENDANT:  I am, Your Honor.

14          THE COURT:  Can you tell me about that, please, sir.

15          THE DEFENDANT:  I take buspirone in a total of

16   45 milligrams daily and Lexapro in a total of 30 milligrams

17   daily.

18          THE COURT:  Are both of those prescribed to you by the

19   medical professionals at the Polk County Jail where you're

20   detained?

21          THE DEFENDANT:  Correct, Your Honor.

22          THE COURT:  And are you taking those medications as

23   prescribed?

24          THE DEFENDANT:  Indeed, Your Honor.

25          THE COURT:  Is there anything about your use of those

1    medications that would negatively affect your ability to

2    understand and participate in today's hearing?

3            THE DEFENDANT:  No, Your Honor.

4            THE COURT:  Mr. Herrold, I note that I didn't see any

5    confirmed medications.  Paragraph 276 lists those medications,

6    Lexapro and buspirone, as reported but not verified.

7            Are you aware of that medication being prescribed to

8    the defendant at Polk County?

9            MR. HERROLD:  I am, Your Honor.

10           THE COURT:  Any objection to the judgment reflecting

11   that those medications are confirmed for him?

12           MR. HERROLD:  No.  Of course not, Your Honor.

13           THE COURT:  Mr. Essley?

14           MR. ESSLEY:  No, Your Honor.

15           THE COURT:  So we'll ensure that the judgment

16   accurately reflects that.

17           Mr. Speidel, are you suffering from any mental health

18   or physical illness or ailment that would make it difficult for

19   you to understand and participate in today's hearing?

20           THE DEFENDANT:  No, Your Honor.

21           THE COURT:  If at any time during this hearing, sir,

22   you do not understand something I say or you have a question,

23   would you please stop me and let me know?

24           THE DEFENDANT:  Absolutely.

25           THE COURT:  The most important thing is that you

1   understand the proceedings.

2        In anticipation of this hearing, the United States

3   Probation Office prepared a presentence investigation report in

4   this case.  I have reviewed that report.  I have also reviewed

5   the sentencing memoranda and exhibits provided by the

6   Government.  The Government has proposed Exhibits 1 through 8.

7   I have reviewed the sentencing memorandum filed by the defense,

8   the sentencing memorandum, as I said, filed by the Government.

9        I received a letter of support for the defendant

10  documented at document 128 in the record.  I have reviewed the

11  materials related to the plea and the docket as a whole and the

12  docket in both cases, and I have also reviewed the victim

13  impact statements and restitution requests that I have

14  received.

15        Are there any other materials that need to be brought

16  to the Court's attention at this time?

17        MR. ESSLEY:  No, Your Honor.

18        THE COURT:  Mr. Herrold?

19        MR. HERROLD:  No, Your Honor.

20        THE COURT:  Any objections to 1 through 8?

21        MR. HERROLD:  No, Your Honor.

22        THE COURT:  And those are admitted and will be

23  maintained -- I think all of them should be under seal; is that

24  correct?

25        MR. ESSLEY:  That's correct, Your Honor.

1            THE COURT:  1 through 8 under seal.

2            That brings us to a discussion of the presentence

3    investigation report.

4            Mr. Essley, have you had the opportunity to review the

5    report on behalf of the United States?

6            MR. ESSLEY:  I have, Your Honor.

7            THE COURT:  And does the Government have any

8    outstanding factual objections or corrections to make to the

9    report?

10           MR. ESSLEY:  Just two brief objections, Your Honor.

11   The first is in paragraph 65.  In that paragraph, it

12   essentially says that one of the defendant's electronic devices

13   held various screen recordings, quote, including the minor

14   females discussed in this offense conduct statement.

15           Upon reviewing that as part of my final review, I

16   realized I believe that should be changed to "in this report."

17   The offense conduct statement referenced had assumed that all

18   the defendant's conduct described in the report would be in the

19   offense conduct statement, when, actually, part of that is now

20   actually in a separate section, so I would suggest just simply

21   changing that to just "this report."

22           Secondly --

23           THE COURT:  Wait.  "This report" would be somewhat

24   vague.  Do you mean "this report" as in the presentence

25   investigation report as a whole?

1          MR. ESSLEY:  That's correct, Your Honor.

2          THE COURT:  Okay.  Mr. Herrold, any objection to that

3   correction?

4          MR. HERROLD:  No, Your Honor.

5          THE COURT:  So we'll say "in this presentence report"

6   to be clear.

7          MR. ESSLEY:  The second correction, Your Honor, was in

8   paragraph 178.  That paragraph discusses law enforcement's

9   determination that one of the victims identified in the

10  indictment has the initials I.H.  At the very end of that

11  paragraph, it says, "Although a forensic interview was

12  scheduled" --

13         THE COURT:  Mr. Essley, you have to slow down.

14         MR. ESSLEY:  Thank you, Your Honor.

15         In that paragraph at the very end, it says, "Although

16  a forensic interview was scheduled, I.H. elected not to

17  participate."

18         Earlier this week I received a recording of that

19  scheduled interview, and I provided it to Mr. Herrold for the

20  defense.  I believe a better characterization of the forensic

21  interview is that she did, in fact, participate in the

22  interview and that she did not, in fact, elect not to

23  participate as paragraph 178 says currently.

24         THE COURT:  So simply "I.H. participated in a forensic

25  interview"?

```
 1              MR. ESSLEY:  I think that would be appropriate,

 2   Your Honor.

 3              THE COURT:  Mr. Herrold?

 4              MR. HERROLD:  That would be accurate.  I don't have

 5   any objection to that.

 6              THE COURT:  So striking the last sentence and

 7   replacing it with "I.H. participated in a forensic interview."

 8              Any other corrections or objections?

 9              MR. ESSLEY:  No, Your Honor.

10              THE COURT:  Thank you.

11              Mr. Herrold, have you and your client had the

12   opportunity to review the presentence investigation report in

13   this case?

14              MR. HERROLD:  We have, Your Honor.

15              THE COURT:  Could you make a record as to how you went

16   about reviewing the document with Mr. Speidel.

17              MR. HERROLD:  Yes, Your Honor.  When the first draft

18   of the report was issued, I met with Mr. Speidel at the jail.

19   We had an hour-long meeting.  I brought a copy of that for him,

20   one for myself, and we went through it together.

21              Given the length of it, I knew he would need some more

22   time with it, and so, subsequently, I had my investigator meet

23   with him again and give him basically as much time as we could

24   get for him to spend the time he felt like he needed with it.

25              Then I had a follow-up meeting again with Mr. Speidel
```

1   to confirm our clarifications, additions, and objections to the

2   report.  We filed those.  I think those have all been addressed

3   by the probation officer in either the final report or the

4   addendum to it.  And then we utilized, in preparation for

5   sentencing here today, a discussion of the final draft of the

6   report once that was issued as well.

7           THE COURT:  Mr. Herrold, in the materials I read in

8   preparation for today's hearing, it was suggested that you

9   maintain a number of factual objections.

10          Do those continue to be objected to at this time?

11          MR. HERROLD:  They do not, Your Honor.  I don't think

12  they are material to the guideline calculation, and we're not

13  just trying to dispute what the victims have indicated in their

14  statements that are provided and are noted in the presentence

15  report.

16          THE COURT:  So are you withdrawing those factual

17  objections?

18          MR. HERROLD:  Yes, I would, Your Honor.

19          THE COURT:  Thank you.

20          Mr. Speidel, we've been talking about the presentence

21  investigation report in this case.  Mr. Herrold explained to me

22  how he and the investigator for the Federal Public Defender

23  went over this report with you.

24          Do you recall going over the report with those

25  professionals as he described?

1          THE DEFENDANT:  Yes.  That's correct, Your Honor.

2          THE COURT:  Have you had a full and fair opportunity

3    to review the material contained in the report?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  After that review, Mr. Herrold has

6    explained to me that you are not contesting any of the facts

7    contained in the report.

8          Do you understand that, sir?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Do you agree that the report is factually

11   accurate or correct?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  Based upon that record, the Court will

14   rely upon the unobjected to factual information contained in

15   the presentence investigation report for purposes of

16   determining the appropriate sentence to impose in this case.

17         That brings us to a discussion of the advisory

18   guideline calculation.  In this case the guideline calculation

19   is somewhat complicated because of the number of victims and

20   the fact that they are not grouped.

21         As we know, the guideline calculation is advisory, and

22   the Court treats it as such, but I am required to accurately

23   calculate and consider the appliable advisory guideline range.

24         I will walk through that calculation at this point as

25   to the offense level computation, which begins on page 27 at

1   paragraph 119.

2          The first count of conviction is Count 6, sexual

3   exploitation and attempted sexual exploitation of a child.  The

4   identified victim is K.W.  The base offense level for that

5   offense is a 32 because the defendant was involved in producing

6   sexually explicit visual printed material.

7          There's a two-level upward adjustment because the

8   victim had attained the age of 12 but not 16.  There's a

9   two-level upward adjustment because there was a sexual act or

10  sexual contact involved in the offense.  There's a four-level

11  upward adjustment because the material includes sadistic or

12  masochistic conduct.

13         There's a two-level upward adjustment for using a

14  computer or other interactive computer service to entice the

15  offense.  That results in an adjusted offense level of 42 as a

16  subtotal for Count 6.

17         Count 4 is the enticement and attempted enticement of

18  a minor.  I said "Count 4."  I meant Count 14.  Count 14,

19  enticement and attempted enticement of a minor.  The individual

20  involved there is Minor Victim No. 7, identified as eight years

21  old.

22         The base offense level there is 28 based upon the

23  offense of conviction.  There's a two-level upward adjustment

24  because of the use of a computer to entice or attempt to entice

25  the prohibited sexual conduct.  There's an eight-level upward

1  adjustment because the offense involved a minor who had not

2  attained the age of 12.

3       There's a two-level upward adjustment because a

4  participant in the offense otherwise unduly engaged a minor to

5  engage in prohibited sexual conduct.  That results in an

6  adjusted offense level of 40 as to that victim in that count.

7       Possession of child pornography is Count 28.  There

8  are 69 known victims from 111 series in that count.  The base

9  offense level, based upon the nature of the conviction, is an

10  18.  There's a two-level upward adjustment because the material

11  involved prepubescent minors.  There's a seven-level upward

12  adjustment because the offense involved distribution to a minor

13  that was intended to persuade or induce the minor to engage in

14  prohibited sexual conduct.

15       There's a four-level upward adjustment because the

16  material involved sadistic or masochistic conduct or sexual

17  exploitation of infants or toddlers.  There's a five-level

18  upward adjustment because the defendant engaged in a pattern of

19  activity involving sexual abuse or exploitation of minors.

20       There's a two-level upward adjustment, again, because

21  the offense involved the use of a computer or an interactive

22  computer service for the possession and receipt.  And there's a

23  five-level upward adjustment because the offense involved 600

24  or more images.  For that offense, the adjusted offense level

25  is a 43.

1       Count 1 of the Information, travel with intent to

2   engage in illicit sexual activity, Minor Victim No. 18, whose

3   initials are P.R., there in paragraph 146, the base offense

4   level includes a cross-reference and is calculated at 32.

5       Paragraph 147, the offense involved commission of a

6   sexual act, which is a two-level upward adjustment.  The

7   offense involved materials that portray sadistic or masochistic

8   conduct, there's a four-level upward adjustment there.  There's

9   a two-level upward adjustment for the use of a computer or

10   interactive computer service, resulting in an adjusted offense

11   level of 40.

12       Under the grouping rules, there are four units

13   assigned to these four separate counts, which increases the

14   offense level by four.  The greatest offense level is a 43,

15   which results in a combined adjusted offense level of 47.

16       There's a four-level upward adjustment, academic as it

17   were, but up to a -- well, the Chapter 4 enhancement applies,

18   and it is a five-level adjustment, which would be up to 52 if

19   the guidelines went that high.  There are two levels off for

20   acceptance of responsibility.

21       Does the Government move for the third level?

22       MR. ESSLEY:  Yes, Your Honor.

23       THE COURT:  So that results in a third level.  The

24   Court grants that motion.

25       The resulting offense level is higher than that which

1   is available under the guidelines, so it is reduced to the

2   highest level, which is a 43.

3          The defendant is a criminal history category I.  The

4   recommended guideline sentence is life imprisonment.  The

5   guideline supervised release range is five years to life.

6   Probation is not an option under the guidelines or the statute,

7   and the fine is recommended between 50,000 to $250,000.

8          Does the Government have any objection to those

9   calculations?

10          MR. ESSLEY:  No, Your Honor.

11          THE COURT:  The defense?

12          MR. HERROLD:  No, Your Honor.

13          THE COURT:  So the Court will look to that advisory

14   guideline range as a starting point for consideration of the

15   appropriate sentence to impose in this case.

16          The advisory guidelines are advisory, and the Court

17   treats them as such, consistent with the rulings of the

18   United States Supreme Court and the United States Court of

19   Appeals for the Eighth Circuit.

20          I don't believe either party sought a traditional

21   departure; correct?

22          MR. ESSLEY:  That's correct, Your Honor.

23          MR. HERROLD:  Correct, Your Honor.

24          THE COURT:  That brings us to the ultimate question in

25   the case, which is the appropriate disposition.

1          As I indicated, I received the evidence from the

2    Government by way of the eight exhibits.

3          Any additional evidence as to disposition on behalf of

4    the Government?

5          MR. ESSLEY:  No evidence from the Government,

6    Your Honor.  Just victim impact statements.

7          THE COURT:  Thank you.

8          Mr. Herrold, I have received a letter of support and

9    have read that.  Do you have any evidence in support of

10   disposition that you would like to introduce at this time?

11         MR. HERROLD:  No, Your Honor.

12         THE COURT:  Thank you.

13         So we will proceed with victim statements.  I received

14   some materials.  There are two different groups of victims in

15   this case, I would say.  There are the individuals who are

16   identified as known to be portrayed in the collection of child

17   pornography that the defendant had.  Those victim impact

18   statements have been read.

19         Do any of those victims wish to be heard at this time?

20         MR. ESSLEY:  No, Your Honor.  None of the series

21   victims wish to be heard.

22         THE COURT:  The second set of victims are those

23   victims who were hands-on victims of this defendant.  I

24   received, I think, two written statements prior to this

25   hearing.

1          Mr. Essley, are you aware of any of those victims who

2     wish to be heard?

3          MR. ESSLEY:  Yes, Your Honor, both of the victims who

4     authored those written statements you received would like to be

5     heard.  One would like to read her statement personally, and

6     one would like Ms. Blanchard to read her statement on her

7     behalf.

8          THE COURT:  In what location are those individuals?

9          MR. ESSLEY:  Both of those individuals are present in

10    the courtroom, and the final statement, which we did not

11    receive in written form, that individual is appearing via Zoom.

12         THE COURT:  Okay.  Why don't we proceed first with

13    those individuals who are present in the courtroom.  I will

14    hear first from the individual victim who wishes to be heard

15    personally.

16         MR. ESSLEY:  And that is Child Victim No. 18,

17    Your Honor.

18         THE COURT:  Thank you.

19         Good morning.  Thank you for being here today.

20         I know that you've got something you would like to

21    read and say to the Court, and I am ready to hear it.  Because

22    you're reading, just make sure you take a deep breath and read

23    slowly so I can accurately hear what you say here today but

24    also so the record can be correct.

25         If you need any water, there's fresh water next to

1    you, and you can pour yourself a glass and take whatever time

2    you need.

3              CHILD VICTIM NO. 18:  Okay.  It all started when I was

4    14.  During this time, I had just moved in with my aunt because

5    the woman who raised me, being my grandmother, had passed away,

6    and my mother had become an alcoholic, and my brother and I had

7    nowhere else to go.

8              Not only this, but I had recently admitted to a crisis

9    center that my father had molested me when I was six years old,

10   and that was the reason I had been hypersexual ever since,

11   getting suspended from elementary school and middle school for

12   sexual harassment, as it was affecting my learning process.

13             I pushed my friends away and then soon shut my family

14   out because they were not the type to talk about emotions or

15   grief, and I was vulnerable, vulnerable, emotional, and I had

16   never felt more alone in my life.

17             I resorted to an online dating app to see who would be

18   crazy enough to love me despite my age, looking for an older

19   man to comfort me and tell me everything was going to be okay.

20   Unfortunately, it was easy, and I soon met Jon.  He was quick

21   to praise me and tell me how beautiful I was, and that's all I

22   needed to hear to be swooned.  I was so eager for his attention

23   because I was so alone, and I only met him two days later.

24             He always wanted me to verbally tell him that he was

25   old enough to be my father during sex and that he wanted me to

act younger than I actually was, making all of this the

beginning of my unhealthy attachment towards him.  I would

spend days on end locking myself in my room just to talk to

him, isolating myself over and over, skipping family dinners

and events to get the so-called love I craved from him.

I got comfortable with him quickly and frequently

talked about my emotions and what I had been through, seeking

comfort, and he did just that.  He always told me when I was

old enough, he would save me from the life I was living and

that we would live happily ever after, and in my 14-year-old

brain, I was so excited and relieved I had found someone who

cared enough about me to dedicate the future to our

relationship.

I lost so many close friends because of him, not

because they knew about him or the relationship we had, but

because parts of him and his habits rubbed off on me, and my

friends soon hated me.  I was perverted, and I was conditioned

to believe how I felt was perfectly fine, while the people who

I loved the most called me disgusting and did not hesitate to

get rid of me, and I never understood why.

I could never look at them normally, only sexually,

and I almost still can't look at young girls the same, and it's

torture every day thinking that I am the predator that he put

inside of me.  This will take years to heal from, and I live

every day with these intrusive thoughts, and because I live

1  with these thoughts, I believe they are going to eat me alive.

2       I can't stand to be alone anymore because all I think

3  is how different I would be today if I never met him and the

4  bad things he said to me and conditioned me to comfortable

5  with.

6       I was so vulnerable with him after all the comforting,

7  reassuring things he would tell me when I would feel so alone

8  and cry to him about my personal life.  He knew everything

9  about me, and what we had felt so much like an adult

10  relationship.  He made me feel special, and he made me feel

11  mature, and it all felt so real to me.

12       I gave my innocence to you, and I will never get that

13  back.  There came a point where I felt that I had loved you so

14  much and wanted to do everything that you told me to do, like

15  leave my family dinner to take naked photos for you, and that's

16  all I knew how to do to get your attention, so I always did it.

17       After being with you, I felt as though no boy or man

18  would love me unless I gave them what they wanted, and that has

19  led me down a deep, dark, emotional path.

20       I had a horrible relationship with my family after

21  they found out that I had a relationship with you, getting

22  teased and made fun of throughout the span of three years,

23  reminding me that I'm sick, sick and disgusting.  I believe

24  that parts of my family still don't see me the same, and I feel

25  like they never saw me as a victim or a sweet, clean, perfect,

1   innocent child like they did with my cousins.

2          And I felt so disgusted with myself, and I believed

3   that all that you did to me was my fault.  I tried to commit

4   suicide because I felt so much like a predator.  Even after

5   that attempt, I would stay up all night debating whether or not

6   I should try to take my own life again to keep others around me

7   safe.  That is just how much I believed it was my fault.  It

8   took me three years to know that it was not my fault.  Even now

9   I struggle with it from time to time, but I try not to let it

10  linger.

11         I am glad that I've grown up to know just how much

12  more mature I am than you.  I'm only 18 now, and you're about

13  30.  You took things away from me emotionally and physically

14  that I will never get back.

15         I beg you, Jon, to dig deep down into yourself and fix

16  whatever has made you this way.  If you are in pain, find the

17  wound deep within yourself and treat it nicely.  Though I may

18  hate you, I don't wish pain upon you, and I hope you accept and

19  take the right steps from here on out and get the help that you

20  need.

21         THE COURT:  Thank you.

22         Additional victim impact statements?

23         MR. ESSLEY:  Yes, Your Honor.  Thank you.

24         At this time Ms. Blanchard will read the victim impact

25  statement from the child identified in the indictment as Child

1   Victim No. 1.

2          THE COURT:  And that victim is associated with --

3   Mr. Essley, that victim is associated with?

4          MR. ESSLEY:  Count No. -- I'm trying to find it.

5   Count No. 2, Your Honor.

6          THE COURT:  So a relevant conduct victim?

7          MR. ESSLEY:  That's right, Your Honor.

8          THE COURT:  Thank you.

9          And, Mr. Herrold, you agree that relevant conduct

10  victims are appropriately heard from during the course of the

11  hearing?

12         MR. HERROLD:  Yes, Your Honor.

13         THE COURT:  Thank you.

14         You may proceed.

15         MS. BLANCHARD:  Thank you.

16         He found me online when I was 15.  I was just coming

17  out of a relationship with my very first boyfriend.  That

18  boyfriend abused me over the course of two years through

19  manipulation and was the only example I knew of how I could

20  expect to be treated in a relationship.

21         My first boyfriend went to the same school as Jon, so

22  that's most likely how he found my profile.  When Jon found and

23  contacted me on Myspace, he made me feel desired and pretty,

24  and, through messaging, he learned that I was vulnerable

25  following my first relationship experience.

1    Jon gave me attention when I was dismissed and ignored

2    at home and knew that I was alone often.  I was often treated

3    as an inconvenience by those who were meant to love me

4    unconditionally and felt I had no space while I was at home.

5    These things made him interested in me as a target to use me as

6    a test subject for how far he could get and the easiest ways he

7    could find and victimize other little girls.

8    So his next step was to push me to do what he wanted

9    and to coerce me into sending him illicit photos of myself.  I

10   was a child, and I didn't like doing it, but he knew how to use

11   my insecurities and my traumas and my loneliness to get what he

12   desired, so I did it.  And soon that wouldn't be enough for

13   him, so he always asked me for more exposure and in detail how

14   he would want the photos to look.

15   I realized that he was gaining my trust, so he pursued

16   asking me to meet in person alone.  I was a minor at 15, and I

17   felt scared, and I knew it wasn't normal for someone older to

18   want to meet secretly, so I told him I did not want to be

19   physical with him and, in my child's mind, thought I was being

20   safe by setting that boundary before following along with his

21   request to meet me.

22   He reassured me and promised me that it would be okay

23   and he wanted to meet me so badly and said the words he knew he

24   needed to say to get me alone, so I went with it.  It was dark,

25   and I snuck out without my parents' knowledge of him ever

1  existing.  We went to different schools, so how would anyone

2  find out?

3          He emotionally confided to me right away about himself

4  and his life after he picked me.  This was calculated in a way

5  to get me to reveal more information about myself in return and

6  relate to each other through our unhealthy relationships with

7  our parents.

8          Yet that was also the first time he raped me, and I

9  just remember being in a parking spot somewhere next to an

10 alley and staring up at the streetlight wondering why this was

11 happening and how I got in the backseat and everything was

12 moving so fast but so still.

13         It felt like no one was around and no one could help

14 me.  I felt as though I wasn't worth anything to anyone, and

15 after telling me friends and mom about it, they made me feel as

16 though it was my fault for being careless.

17         But eventually it seemed like no one else wanted me

18 around as much as he did.  I started opening up to others about

19 his behavior, and people started noticing something was wrong.

20         After he raped me, it took a few months to tell my

21 mom, and when I did, she took me to the doctor.  The doctor

22 told me I contracted chlamydia.  My mom tried to report him for

23 stash statutory rape, especially when I told her I met him when

24 I was 15.

25         At the time of the report, I was dismissed because I

was 16 and within the age of consent, although the report was

for the year before and I was a minor when he was 18.  But for

three years, I stayed strung along because it was better than

being home alone, and I didn't think I deserved anything

better.  For three years, he would tell me what to say to get

me to lie to my parents and get me to sneak away when the

chance arose.

Once I had a job and a car, it was easier to hide what

I was doing.  I would get grounded often from my car, my phone,

and my computer if his name ever came up or was seen on my

phone or Facebook.  My mom would tell him not to contact me,

and he would curse her out and tell her that would never

happen.

I often comforted myself with the narrative that I was

just mature and that being with someone older looked cool.  I

had to convince myself that if he didn't want me as his

girlfriend, he would like me more if I stayed in an open

relationship.  When he was on the phone, he would say to his

friends I was his main bitch.  Being so young, I didn't realize

there was no openness about anything he did and it was just his

way of continuing his hunt for more girls and rape more girls

to feed his habit.

He tried to get me to watch porn with him, which I

never did when he asked me or ever wanted to see, but he would

continue to watch it in front of me anyway.  When he did want

1 to have sex, he would push my face into his carpet, leave

2 scratch marks all over my body, bite me, and treated me like a

3 sex toy.  At one point the worst he ever did to me was anally

4 rape me without my consent through obvious pain and tears.  I

5 was only 17.  Over time I started to realize my relationship

6 with him was none of indentured servitude and manipulation.

7 When I was a senior in high school, I turned 18, and I

8 became no longer of interest to him.  He needed complete

9 submission, and he could not get that unless the person he was

10 victimizing was underage and more impressionable in order to

11 normalize extremely sexual behavior.

12 Once I started my second semester of my senior year, I

13 nearly lost my life by attempting suicide.  My mother didn't

14 want to deal with my struggles, so she left me in defeat and

15 moved 2,000 miles away.  That left me without a home to go to

16 while I was still in high school.  I was a lost cause to my

17 mother.  I was left sleeping on the couch of a coworker, who

18 also took advantage of me when I just needed a place to sleep

19 so I could continue school to graduate and somehow keep my

20 after-school job to afford to feed myself.

21 Once I was kicked out of my house before I landed on

22 my coworker's couch, my friends slowly stopped talking to me

23 when I asked for places to stay and was left isolated and with

24 no safe choices.  Jon was messaging me the night I attempted

25 suicide and visited me in the hospital, so he was aware of what

1   happened to me and still never talked to me again.  He fled to

2   Oregon the same year so he could continue sexually abusing

3   little girls in a new place where he might escape with less

4   notice or take any accountability.

5           He thankfully disappeared, but my life didn't all of a

6   sudden become normal.  Because of the damage he inflicted on me

7   during the years when I should have been learning to rate

8   complicated feelings, learn about myself, conceptualize the

9   world, I experienced self-destructive behavior that I have

10  worked persistently every day to unlearn.

11          I struggle with complex post-traumatic stress

12  disorder, major depressive disorder, and severe anxiety, and

13  while I was in affiliation with Jon, I had been diagnosed with

14  body dysmorphic disorder and was perpetually in a state of

15  self-loathing.

16          I am 28 years old, and I still have a hard time

17  knowing what a healthy relationship feels like and what

18  nontoxic relationships look like.  He severed any connection I

19  have between my body, my mind, and my soul because I never had

20  a chance to begin to understand that dynamic without it being

21  stolen from me.  He has discolored the way I see the world

22  every day of my life since the day I met him.

23          I would ask the Court to consider the ways his abuse

24  has affected me and all the other countless unnamed little

25  girls he has abused while determining an appropriate sentence

1    for this case and circumstances.

2         Thank you.

3         THE COURT:  Thank you.

4         We will now hear from the individual who is appearing

5    remotely.

6         Mr. Essley, can you identify who this individual is?

7         MR. ESSLEY:  Yes, Your Honor.  This is a

8    representative on behalf of Child Victim No. 18.  Specifically,

9    it's her biological mother.

10        THE COURT:  Ma'am, can you hear me?

11        One moment.

12        Ma'am, can you hear me?

13        MOTHER OF CHILD VICTIM NO. 18:  Yes.  Yes.

14        THE COURT:  We can hear you, and you can provide your

15   victim impact statement at this time.  At this point, I can

16   display you to the courtroom, if you would like your face to be

17   displayed, or you can remain --

18        MOTHER OF CHILD VICTIM NO. 18:  No.

19        THE COURT:  -- so that only I can see you.  What is

20   your preference?

21        MOTHER OF CHILD VICTIM NO. 18:  No.  I would like to

22   be on display.

23        THE COURT:  We will --

24        MOTHER OF CHILD VICTIM NO. 18:  I would like the

25   courtroom --

```
1              THE COURT:  One moment.

2              MOTHER OF CHILD VICTIM NO. 18:  Sure.

3              THE COURT:  We will allow the video to be seen.

4         Thank you.  You may proceed at this time.

5              MOTHER OF CHILD VICTIM NO. 18:  I am so angry right

6    now it's -- so angry.  Jonathan Francis Speidel, you had 28

7    counts brought against you.  I know that number is very low.

8    You probably have 50, maybe 60 victims.

9              It won't matter how much time you get because you are

10   a serial predator, and you've been doing it for a long time.

11   There are and will continue to be victims from you.  You cannot

12   be healed from this.

13             Also, I cannot either.  You destroyed the sanctity of

14   our family.  My -- I was -- I am an alcoholic, and my

15   sister-in-law at the time understood, but her family didn't,

16   and they treated my child like a predator.

17             It's -- you know, I -- looking at you now, you're such

18   a dainty little thing.  I hope that you have protection when

19   you get out because, you know, I think I could take you.  You

20   should really insist on chemical castration because you cannot

21   be healed.  You're a predator, and you will always be a child

22   predator or pedophile, whatever you choose.

23             Thank you very much.

24             THE COURT:  Thank you, ma'am.

25             Mr. Essley, are you aware of any other victims that
```

1 | wish to be heard?

2 |      MR. ESSLEY:  No, Your Honor.

3 |      THE COURT:  Thank you.

4 |      At this time I'll hear from the parties as to the

5 | advocated-for disposition.

6 |      Mr. Herrold, on behalf of the defense.

7 |      MR. HERROLD:  Thank you, Your Honor.

8 |      I know it's in the record -- my brief is in the

9 | record, and the Court has read that.  I will just make a few,

10 | perhaps, additional points or reiterate a few points.

11 |      I think sexual activity of any sort, good, bad,

12 | healthy, unhealthy, everything on the spectrum, obviously, as

13 | is clear today from what we have heard and with what's in the

14 | record, has its physical, mental, and emotional impacts on

15 | everybody involved and to any degree.  And that's why we draw

16 | lines morally and legally and in society here about how these

17 | such things have to be conducted and what behavior is

18 | acceptable and what age limits are appropriate and acceptable

19 | and legal.

20 |      And, obviously, Mr. Speidel crossed those lines.  He

21 | started when he was a teenager, and it didn't change.  He kind

22 | of froze, and as he's aged, he's continued to pursue minors.

23 | There is no excuse for it, and the law does not allow an excuse

24 | for it.  We put the responsibility on the adult.  That's one of

25 | the lines we draw.  He crossed those with some various degrees

1 of severe egregiousness present in this case and in the

2 presentence report and as we've heard in some of the victim

3 impact statements.

4   I think that was perhaps further fed through this kind

5 of Internet rabbit hole that he kind of has been living in for

6 a long time, and that is where the conduct kind of starts, with

7 these online chats, and then that leads to seeking images that

8 would constitute child pornography, again, given the ages

9 involved; obtaining other child pornography images from the

10 Internet, as reflected in the possession count of conviction;

11 and I think it kind of further polluted his dynamic to a large

12 extent.

13   And so when minors are involved, particularly troubled

14 minors with trauma in their backgrounds, they're not equipped

15 to see and understand and deal with what's happening.  And,

16 again, that's why the law -- and we put the burden on the adult

17 to not do these sorts of things.

18   He crossed these lines, obtained child pornography,

19 these kind of sexualized -- hypersexualized sometimes

20 interactions, seeking actually having meetups for sexual

21 activity, and there's these power balances in play here all the

22 way through, and I think those have been illustrated in the

23 presentence report and some of the statements we've heard here

24 today.

25   There's these imbalances on both the mental and

1   emotional level, and I think those contributed to what conduct

2   the law would absolutely and does define as sadistic and

3   masochistic and instances of objectification here as well, and

4   those are documented in the presentence report.

5         Mr. Speidel needed an intervention of some sort here

6   in what was going on with him and what has been going on with

7   him in his life, and it didn't happen until we got here, and

8   that's unfortunate for everybody involved here, including him.

9         His home life growing up was chaotic.  It's noted that

10  when he went to foster care, he described that interaction with

11  that family as normal.  I'm not sure that Mr. Speidel knew or

12  even perhaps now knows what a normal family circumstance is,

13  given what he grew up with, where his mother had some physical

14  health problems that led to eventually, I think, some severe

15  mental health problems, and that led to abuse of him.

16        He did have that brief stay in the foster system, and

17  his father takes a more prominent role in his life, comes into

18  the picture.  His father's marriage ends, and that again upends

19  young Mr. Speidel's life again, and that's a form of additional

20  trauma as well.

21        I think he sees elements of -- and maybe that's not

22  the right word, but escapism to some extent perhaps with him

23  where he's living a life, he can go to work, he can go to

24  school, but, in some ways, he's not really there, and, instead,

25  he's living this, like, online life, this dark online life.

1          And you see that -- again, more escapism through -- he

2     doesn't have major hard drug problems, but marijuana has been a

3     big fixture for him and some relatively more intense forms of

4     marijuana than we often see.

5          He does have and did have people in his life there,

6     but I'm not sure he knew how to turn to them all the time.

7     He's kind of adrift.

8          And then he gets hit again with another trauma when

9     his mother dies, and I see him -- I think it shows in the

10    presentence report in a lot of ways -- he's kind of in a lot of

11    ways always been on his own and missed out on some of the

12    important things because of that.

13         And all the sexual activity here and the hardcore kind

14    of pornography addiction and the conduct and the abusive

15    conduct, again, that's its own form of drug too, and we draw

16    these lines, and he crossed them.

17         The Oregon offense, the state charge, that should have

18    been an intervening moment.  He bonded out on that charge

19    almost immediately, and I don't think it was real enough.  He

20    pursued that illicit relationship further.  That led to the

21    travel offense which he pled guilty to in the Information here.

22         So he kind of continued from there with this online

23    lifestyle that was uncovered in more detail, in-depth, when the

24    search warrant was executed in our case here a few years later,

25    and that unearthed more of the offense conduct that's before

1    the Court here today.  I think Mr. Speidel is, to some extent,

2    to a large extent, perhaps a damaged person who caused more

3    damage to other persons.

4         But it did get real when he got charged here.  This is

5    the intervening moment, and it's a heavy and it's a hard one.

6    He owned up to it right away when the case was charged here

7    after he understood what was coming, knew what he knew, that

8    the guideline range was likely going to be life, even as the

9    superseding indictment came down and even as more information

10   has continued to come forward as the case has gone forward here

11   to sentencing.

12        And he's not wavered from that.  He does have

13   recognition, I think, now of the seriousness of what he did.

14   He recognizes and has more recognition of the impact on the

15   victims, their families, the continuing impact on them going

16   forward.  He has not been interested or inclined in trying to

17   put them through any more hardship and trauma than what they

18   have already gone through and recognizes that even just going

19   through this process brings more of that for them as well.

20   He's not been trying to dispute their recollections or

21   perceptions or their feelings about what they went through with

22   him.  He can't take it back, but he's tried not to make it

23   worse as he's gone through this.

24        And so the question here now is what punishment is

25   sufficient but not greater than necessary under the statutes

1   for Mr. Speidel.  I noted in the brief the guidelines here are

2   just advisory.  They are advisory.  They create, to some

3   extent, kind of a feedback loop on sexual type of offenses when

4   there's multiple victims involved and various different harms

5   involved, pattern enhancements building on top of pattern

6   enhancements, non-grouping rules, again, more lines laid down

7   by the Commission, and we have to apply them and take their

8   suggestion into account.

9        But I think we also have to look at where he falls on

10  the overall spectrum of offenses and offenders.  There are no

11  short sentences available in this case, and we are not here

12  asking for one.  We are asking the Court to put him where he

13  falls on the spectrum relative to the other horrors that have

14  come before this and other federal courts.  And I think when

15  you do that, again, while the sentence isn't short, I don't

16  think it's a life sentence, and I think life would be a greater

17  than necessary sentence to impose in this case.

18       I cited in our brief some comparisons.  I know every

19  case is unique and every defendant is unique, but this is a

20  person who is still a relatively young man, some traumatic

21  background and circumstances, mental health problems lurking in

22  the background here, and related, I think, substance abuse

23  problems.  And these are problems that have never really, I

24  think, been dove into and addressed the way they needed.

25  Getting medication is one thing, but exploring the reasons why

1   you need medication is another, and he's never had that.

2         He has no criminal history to speak of.  One

3   paraphernalia conviction in his record.  And I think anything

4   that the Court imposes here is going to be a sentence that will

5   protect the public for a long period of time, will be

6   sufficient to contain specific and general deterrent force, as

7   required by the statute, but can start getting him some help

8   building the foundation that he needs and that he has perhaps

9   lacked while he's removed from society for decades here,

10  perhaps longer than he's lived, and that can further later --

11  if he goes onto supervision later -- I hope he does go onto

12  supervision later -- if he does do that, if the Court gives him

13  a sentence where he gets out some day here, he understands that

14  it doesn't end.

15        Not only do you have to comply with supervision, but

16  he'll be subject to a lifetime sex offender registration in

17  this jurisdiction for sure, and it's hard to fathom where that

18  wouldn't likely be the case.  Whatever the Internet looks like

19  when he is released, he knows he won't be on it except to the

20  extent necessary to survive and live in our society and, even

21  then, that would be with intense monitoring.

22        I think given the scope, the duration of what he's

23  done, I think you do have to, in imposing and deciding what a

24  just punishment is, credit him for the way he's accepted

25  responsibility, handled the case here, and tried not to further

1    traumatize what are clearly traumatized victims.

2           And I think all those circumstances, along with what's

3    noted in my memorandum, all point to a just punishment here

4    being a sentence below the lifetime advisory range and that

5    such a sentence here would be sufficient to fulfill the 3553(a)

6    factors of Title 18, including the vindicative and punitive

7    aspects of sentencing that are also built into that statute as

8    well.

9           Thank you, Judge.

10          THE COURT:  Thank you, Mr. Herrold.

11          Mr. Speidel, now is the time during the hearing where

12   you have the opportunity to speak.  You do not have to say

13   anything, but if you would like to, the Court will consider it.

14          Is there anything you would like to say, sir?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  You may remain seated.  Thank you.

17          THE DEFENDANT:  Thank you, Your Honor, for allowing me

18   the chance to speak today.  First and foremost, I would like to

19   apologize to everyone who I have hurt and especially their

20   family, who I know shares in that pain.

21          And I would like to apologize to my friends and family

22   who now have to bear the emotional and financial burden that

23   they never asked for.

24          During my incarceration so far, I have had a lot of

25   time to dwell and also to absorb the impact of my actions.

1   This brings me no joy.  It is important to understanding the

2   true severity of the situation.

3        I have also had time to reflect on how much I took for

4   granted every day, from the small things like driving to the

5   greater ones like the love that my family had for me,

6   especially my dad back there.  And it's been tough realizing

7   how much I missed and also how I wish I could have seen it

8   sooner.

9        I hope before sentencing me today, I can just make it

10   known that I truly am a sensitive person and I never intended

11   for my actions to, like, cause so much damage, especially after

12   hearing -- especially after hearing P█████ talk today.

13        Going forward, I hope I can make better decisions.  I

14   hope I think before I act and prioritize the feelings of others

15   above the desires of myself.

16        Lastly, I would just like to plead for mercy in your

17   judgment, as of now, only realizing the preciousness and

18   fleeting nature of our lives.

19        Thank you again.

20        THE COURT:  Thank you, Mr. Speidel.

21        Mr. Essley, on behalf of the United States.

22        MR. ESSLEY:  Thank you, Your Honor.

23        Your Honor, based on all of the sentencing factors

24   here, the Government believes a life sentence is sufficient but

25   not greater than necessary.  That sentence accounts for the

1  seriousness of the defendant's crimes, the dangerousness he

2  presents, and it accurately reflects the harm that he has

3  caused so many children.

4       It's helpful here to talk about some of the numbers

5  involved in the case, and I think those numbers show that the

6  defendant falls on the far side of the sentencing spectrum.

7       First, 12 years, the defendant's entire adult life.

8  During that period, he has engaged in three forms of ongoing

9  criminal conduct.  First, he has exchanged and collected child

10  pornography; second, he has solicited minors to produce child

11  pornography; and third, he has engaged in sex acts with minors.

12       856 images and 240 videos.  That was the child

13  pornography located on the defendant's electronics devices.

14  The metadata on those files indicate he downloaded those from

15  2009 to March 2022, including material depicting minors under

16  the age of 12 and also minors engaged in sex acts with adult

17  males.

18       Not only did the defendant possess that child

19  pornography, he also weaponized it in two ways:  He transported

20  it to other people and exchanged it with other people.  That

21  alone caused a substantial harm to the children depicted in

22  those materials, it furthered the market for child pornography,

23  and it ensured the sexual exploitation of those children was

24  carried on for years to come.

25       He also transported child pornography to minors

1  directly, enticing them to engage in prohibited sexual conduct

2  and to send him child pornography.

3       111.  111 series victims.  That's the number real life

4  identified victims depicted in Defendant's pornography

5  collection.  Victims who, again, have to live their entire life

6  knowing that Defendant and others like him are viewing their

7  bodies as they are abused and exploited repeatedly.

8       Over 20.  Over 20 victims that the defendant admitted

9  to coercing and enticing to produce child pornography.  By his

10  admission, he wanted to corrupt these children, to brainwash

11  them.  He wanted the children to feel like he was the only

12  thing they had.  He targeted vulnerable and traumatized

13  children, children who were not capable of understanding what

14  was happening, children who were suicidal or who had endured

15  prior sexual abuse.  He asked some of those victims for

16  sexually explicit conduct daily.

17       We know that the number of victims is likely much

18  greater.  Multiple victims described interactions with the

19  defendant where he would show them materials he collected from

20  other minors, show them or tell them about material and about

21  conversations he was having with other children.

22       Over 50,000.  Over 50,000 Snapchat messages exchanged

23  between the defendant and the victims referenced throughout the

24  presentence investigation report.  That number does not account

25  for the conversations that either he or the victims did not

1  save on Snapchat.  It does not account for the victims he met

2  on other social media applications like MeetMe and TikTok.

3         Eight years old.  That's the age of the youngest

4  victim known to have had a direct communication with Defendant

5  on Snapchat.  He asked that eight-year-old child for an image

6  of her, quote, princess parts.

7         The Snapchat records referenced in the presentence

8  investigation report also indicate that the defendant

9  communicated on Snapchat with children of ages 10, 12, 13

10 through 17.  He was attracted to prepubescent and pubescent

11 children, and he asked them for child pornography.

12        $100.  That's the amount of money the defendant

13 offered to pay at least two victims to record them performing

14 various sex acts, and that was only one way the defendant tried

15 to manipulate children into creating and sending him child

16 pornography.

17        He lied to them about his age.  He coached them how to

18 perform sex acts.  He sent them videos of obscene material.  He

19 showered them with compliments and flattery.  He urged them to

20 corrupt their friends or encouraged them to have their friends

21 speak with him.

22        Seven years old.  That's the age of the youngest child

23 referenced in the presentence report that the defendant

24 solicited child pornography or tried to obtain child

25 pornography from.  The defendant learned a victim had access to

1    a seven-year-old and requested that that victim create child

2    pornography with the seven-year-old child.

3           At least six times in the PSR, in the presentence

4    report, there are at least six instances of the defendant

5    engaging in nonconsensual sex acts with a child, multiple acts

6    of anal rape, multiple acts of forced oral sex that resulted in

7    one occasion with the victim vomiting on Mr. Speidel.

8           The presentence report also references five sexual

9    relationships that the defendant had with minor children.  Four

10   of those relationships involve months- or even years-long

11   sexual relationships the defendant had with children.

12          And the defendant had at least three opportunities,

13   three intervening events, to stop what he was doing.  In 2019

14   the defendant was found in Oregon with a 15-year-old after just

15   having had sex with that child, a child he had had sex with

16   since she was the age of 14.

17          He was charged with crimes related to having sex with

18   that child, but he did not stop at that point.  He lied to

19   police officers that night.  He tried to manipulate the victim

20   to lie on his behalf, and she did so initially, and then he

21   doubled down on his inappropriate behavior.

22          After being charged Oregon, he returns to Iowa, books

23   a rental car a year later, books a hotel, books a flight, flies

24   from Iowa to Oregon, picks up the victim, and he travels to

25   Washington, doing so solely to evade Oregon's statutory rape

1    laws, which he, at that point, was intimately familiar with

2    given the pending Oregon charges.

3         The second intervening event, in early 2022, Snapchat

4    actually shut down one of the defendant's Snapchat accounts.

5    What did he do at that point?  He created a new one.

6         And then, finally, the third intervening event was in

7    March of 2022.  A search warrant was executed at his house.  He

8    did not admit guilt that day.  Instead, he started back up

9    immediately with trying to contact children, as set forth in

10   both the presentence investigation report and also in Exhibits

11   6, 7, and 8, including in Exhibits 7 and 8 suggesting to two

12   minors allegedly in Florida that he would come visit them.

13        And throughout this entire period, this whole time,

14   the defendant knew what he was doing was wrong.  He admitted

15   that much to children, and children told him that.

16        And the last number I'll reference, Your Honor, is the

17   number 1.  That stands for one image, an image that says a lot

18   about this case, about the power the defendant had over the

19   children he exploited.  It shows the trust that these children

20   gave to this defendant, and it shows the defendant's attraction

21   to children.

22        That image is located in the presentence report at

23   paragraph 57.  It's not an image of child pornography.  It's

24   not an image of sexually explicit conduct or content.  It's an

25   image of Defendant with one of the children in a hotel in

1   Washington State.  The victim in that picture is 16 years old,

2   but by that time, she had been engaged in a sexual relationship

3   with the defendant for roughly two years.

4          The photo was taken either before or after they

5   engaged in sex acts together.  We don't know.  But we do know

6   it shows the child smiling, manipulated by the defendant,

7   believing that Defendant cared for her, that she was his,

8   quote, daughter.  But what Defendant did to that child and all

9   these children is not what someone does to someone they care

10  for.

11         Your Honor, those are just some of the numbers in this

12  case.  The issue with numbers and the problem with that

13  picture, though, is that they don't tell the whole story.

14  They're a snapshot.  They're helpful to quantify the incredible

15  scope of the defendant's crimes, but numbers are dehumanizing.

16  They take something out of this case, the fact that the

17  defendant did real-life harm to real-life children.

18         In that way, numbers are a lot like the defendant.

19  What he did to all these children that he abused and exploited

20  was dehumanize them.  He treated them as objects, things that

21  could be used and exploited to fulfill his needs.  Read his

22  comments in the presentence report, and it's apparent he took

23  great enjoyment in abusing the children about being older than

24  them and about corrupting and brainwashing them.

25         Numbers don't get at the pain the defendant has

1   wrought, the trauma, the damage he has done to so many

2   children, and the baggage that they will carry with them for

3   the rest of their lives.

4         Perhaps the defendant was able to escape during these

5   moments, but the children weren't, and they never will be able

6   to.  That damage is incalculable and unquantifiable, and so too

7   is the sentence here.  The guidelines are off the chart.

8         Life is precious, and it's with great reservation that

9   the Government asks for a life sentence, but in this case,

10  there is simply no number, no amount of months or years that

11  will account for the defendant's crimes, for the danger he

12  presents to society, and the damage he has done.

13        Defendant's crimes demand a life sentence.  The

14  sentence is authorized by statute, it's the sentence

15  recommended by the advisory sentencing guidelines, and it's the

16  sentence that justice demands.

17        Thank you.

18        THE COURT:  Thank you, Mr. Essley.

19        The Court is required to consider a number of factors

20  before deciding on an appropriate sentence in this and every

21  case, and those factors are set forth in Title 18, United

22  States Code, Section 3553(a).  They include the defendant's

23  history and characteristics and the nature and circumstances of

24  this offense.

25        The Court must also consider the need for the sentence

1   imposed to reflect the seriousness of the offense, to promote

2   respect for the law, to provide just punishment, and to

3   adequately deter future criminal conduct, both for this

4   defendant and for others who might contemplate committing such

5   offenses in the future.

6          The Court has to consider the need for the sentence

7   imposed to protect the public and to provide the defendant with

8   needed educational training or other needs in the most

9   effective manner.

10          The Court has to consider the sentencing guidelines

11  and the advice they provide as well as the need to avoid

12  unwarranted sentencing disparities among defendants with

13  similar records who have been found guilty of similar conduct.

14          The Court must also consider the need for restitution,

15  as we discussed at the outset of the hearing.

16          I may not speak about each one of the statutory

17  considerations specifically in articulating the reasoning for

18  my sentence, but in determining the appropriate sentence to

19  impose, I have considered each and every one of them.

20          Ultimately, the sentence the Court imposes must be

21  sufficient but not greater than necessary to serve the purposes

22  of sentencing.

23          I'm going to say that again.  Ultimately, the sentence

24  the Court imposes must be sufficient but not greater than

25  necessary to serve the purposes of sentencing.  And that really

1  is, in this case, a challenge, and that is because the amount

2  of harm committed by this defendant is almost overwhelming.

3       Reading the presentence investigation report, noting

4  the numbers that the Government just cited, it is almost unable

5  to be comprehended that from the time this defendant was 18

6  until he eventually was arrested and detained, that he

7  committed all manner of harm against vulnerable children.

8       The 28 separate counts that were charged in the

9  indictment, the Information, the individuals identified as

10  other than relevant conduct in the presentence investigation

11  report, the 111 different series of child pornography

12  representing 69 known victims -- no -- 321 images and 69 video

13  images of known victims from 111 different series, that

14  standing alone is an incredible amount of harm and is treated

15  seriously by the statutes and by this Court.

16       But in this instance, the child pornography possession

17  is but the last domino to fall in a series of criminal

18  activities that lasted for years, and I think the most

19  aggravating factor here is the timeline.  Hearing the letter

20  read by the victim-witness coordinator, that is someone who

21  knew the defendant when he was in high school here in the

22  Des Moines Metro area.  She identified him as learning about

23  her because of her high school boyfriend, who was at the same

24  high school, and she identified that, after she attempted to

25  commit suicide and he visited her in the hospital, he left

1    town.

2           I don't know which police department she reported

3    her -- or her mother reported her statutory rape to as a

4    16-year-old, but that was a lost opportunity for law

5    enforcement to apprehend and hold accountable the actions of

6    someone who continued to go on and harm children.

7           But the defendant left the Des Moines Metro and went

8    to Oregon and then committed new serious criminal activity,

9    including that recounted by the victim who testified live and

10   whose victimization is reflected in the unobjected to portions

11   of the presentence investigation report and the exhibits

12   entered here today.

13          The fact that the defendant was arrested and being

14   found in a park at night with a child was taken seriously

15   and -- arrested and charged and yet came back to Des Moines and

16   continued to engage in the same conduct after that 2019

17   arrest -- the amount of planning and manipulation and intent

18   evidenced by not only flying to Oregon but renting a car and

19   then driving to Washington, that is an excellent example of why

20   travel with intent to engage in illicit sexual activity is a

21   federal crime.

22          The materials include amazing references that

23   demonstrate not only the knowledge of the age of the victims in

24   this case but the preference for, paragraph 87, paragraph 58.

25   The discussion reflected in paragraphs 92 to 99 with the

1   eight-year-old, who purportedly the defendant believed was 12,

2   and the attempts at manipulation and grooming and word choice

3   is simply shocking.

4         The other aspect of this case that is aggravating is

5   that because of technological limitations and the uses in the

6   technological means that this defendant chose to commit his

7   crimes on and to abuse children on, it is -- even with this

8   unimaginable level of harm and an unimaginable number of

9   victims, there is so much more.

10        The only videos that we have or photos that we have

11  from Snapchat or communications that were saved are those that

12  were intentionally saved by either this defendant or his

13  victims.  The context and content of those surely suggests that

14  there are many, many more that were not saved.

15        Similarly, the presentence investigation report is

16  replete with references to video chatting during which the

17  defendant engaged in sexual activity and had minors engage in

18  sexual activity, but none of those -- or I did not see any

19  references to those being screen-captured in any way, but those

20  are additional instances of sexual abuse of minors that

21  demonstrate that the criminal conduct here went far beyond the

22  voluminous documented materials in the presentence

23  investigation report.

24        The defendant is 31 years old.  His background does

25  include trauma.  The presentence investigation report reflects

1   a difficult childhood where being removed from one's home and

2   placed in foster care was seen as positive and normal and

3   better.

4          The defendant has pleaded guilty to three counts of

5   the 28-count indictment and agreed to an Information and

6   pleaded guilty to the separate Information, which provides some

7   level of accountability and acceptance of responsibility and

8   does prevent victims from having to testify at a trial in front

9   of a jury, which is not an insignificant benefit.

10         Counsel, do you know of any legal reason why the Court

11  should not impose sentence at this time?

12         MR. ESSLEY:  No, Your Honor.

13         MR. HERROLD:  No, Your Honor.

14         THE COURT:  For the foregoing reasons and after

15  considering all of the relevant factors and the materials I

16  have previously discussed, it is the judgment of the Court that

17  the defendant, Jonathan Francis Speidel, is sentenced as

18  follows:

19         On Count 14, enticement or attempted enticement of a

20  minor, a period of imprisonment of 360 months or 30 years; on

21  Count 6, sexual exploitation or attempted sexual exploitation

22  of a child, a term of imprisonment of 360 months or 30 years;

23  on Count 28, possession of child pornography, a term of

24  imprisonment of 240 months or 20 years, with each of those

25  sentences to be served concurrently, or at the same time, for a

1   total term of imprisonment on the indictment of 360 months or

2   30 years.

3          On Count 1 of the Information in Case No. 4:22-cr-152,

4   travel with intent to engage in illicit sexual activity, the

5   Court imposes a consecutive term of 30 years or 360 months

6   consecutive to the previously imposed term of imprisonment on

7   the indictment in Case No. 4:22-cr-082 for a total term of

8   imprisonment of 720 months or 60 years.

9          Each of those terms will be consecutive to any

10  undischarged term of imprisonment imposed in the Oregon offense

11  identified in paragraph 260 in Case No. W20CR15085.

12         I recognize my authority to vary downward further from

13  the life guideline range calculated correctly in the

14  United States Sentencing Guidelines, as may be preferred by the

15  defense.  I recognize my authority to sentence these all

16  concurrently, both with each other and with the Oregon State

17  sentence.

18         Ultimately, the Court has concluded that a term of

19  60 years, which puts this defendant well into the twilight of

20  his life upon his release, is sufficient but not greater than

21  necessary to serve the purposes of sentencing, particularly

22  considering his own history and characteristics and his plea of

23  guilty in this case.

24         I do not impose a fine, finding that any monetary

25  penalties associated with this case should be directed towards

1    restitution.

2         Restitution is ordered in part today, consistent with

3    the record made at the beginning of the hearing.  The Court

4    will today impose an amount of restitution of $24,000, divided

5    amongst the identified victims that have sought restitution at

6    $3,000 each, to Angela of the Angela series; April of the

7    Aprilblonde series; Ivy of the JBN Flowers2 series; Jen of the

8    JBN Flowers1 series; Jenny of the Jenny series; Pia of the

9    Sweet White Sugar series; Cindy of the Cindy series; and Tara

10   of the Tara series.

11        The remaining amount of restitution is held open at

12   this time.  I note that, hearing from the victims here today,

13   particularly the victims that were identified as some of the 20

14   that the defendant harmed during the course of this case, I

15   urge the Government to provide those victims with complete

16   information about the documentation necessary for obtaining

17   restitution sufficient to address all of the harm consistent

18   with the statute.

19        I do note that I will not impose the JVAA or the AVAA

20   based upon a finding of indigency in light of the term of

21   incarceration and the significant restitution order that will

22   be imposed in this case.

23        I do impose a $100 special assessment on each count of

24   conviction for a total of $400 due and payable immediately

25   without interest to the United States Clerk of Court for the

1   Southern District of Iowa.

2          I similarly will waive interest for the restitution.

3          In addition to the term of imprisonment, on each count

4   of conviction in both the indictment and the Information, I

5   impose a lifetime term of supervision.  If this defendant lives

6   to be released from the custody of the Bureau of Prisons, it is

7   imperative that the public be protected even at that late stage

8   of life.

9          Mr. Speidel, within 72 hours of your release from the

10  custody of the Bureau of Prisons, you'll be required to report

11  in person to the probation office in the district to which you

12  are released.

13         While on supervised release, you shall not commit

14  another state, federal, or local crime; you shall not

15  unlawfully possess a controlled substance; and you shall not

16  unlawfully use a controlled substance.

17         You'll be subject to at least one drug test within

18  15 days of your release and at least two more thereafter.

19         And you must cooperate in the collection of DNA.

20         You are a felon.  You may not possess a firearm,

21  destructive device, or ammunition either during your term of

22  supervised release or at any time thereafter.

23         You'll be required to abide by the standard conditions

24  of supervised release as set forth by the United States

25  Sentencing Guidelines, and those will be reflected in the

1    written judgment entered here today.

2          You also most comply with the requirements of the Sex

3    Offender Registration and Notification Act as directed by the

4    probation office, the Bureau of Prisons, or any state sex

5    offender registration agency in which you reside, work, are a

6    student, or were convicted of a qualifying offense.

7          You must make restitution in accordance with 18,

8    United States Code, Sections 3663 and 3663(a).

9          You'll also be subject to the special conditions of

10   supervision that were set forth in the presentence

11   investigation report and were unobjected to by the defense.

12   I'll briefly summarize those for you now, sir.  You should note

13   they will be implemented and enforced in full as written.  They

14   are in part G of the report beginning at paragraph 318.

15         You must participate in a program of testing or

16   treatment for substance abuse.  In furtherance of that

17   treatment, you'll be restricted from the use of alcohol or any

18   other intoxicants.

19         You must submit to a mental health evaluation and

20   comply with any treatment that's recommended.

21         You must comply with all sex offender laws for the

22   state in which you reside and must register with the local

23   sheriff's office within the applicable time frame.

24         You must follow a sex offense specific treatment

25   program as directed by the U.S. Probation Office, as set forth

1   in paragraph 321.  As part of that treatment, you'll be

2   required to comply with periodic polygraph testing, as set

3   forth in paragraph 322.

4         You must not go to or remain at any place for the

5   primary purpose of observing children under the age of 18 or

6   any place where you know children under the age of 18 are

7   likely to be, including parks, schools, and playgrounds,

8   without the prior approval of the probation office.

9         You must not have any direct contact, personal,

10   electronic, through mail, or otherwise, with any child or

11   anyone you reasonably should know to be a child.

12         You must not contact the victims nor the victims'

13   family without prior permission from the probation office.

14         Mr. Essley, it's a generic "victims" in this

15   paragraph.  I wonder if there would be a benefit to including

16   victims, to include specifically identified victims as well,

17   such as P.R., that the defendant has had continuing contact

18   with.

19         MR. ESSLEY:  That's appropriate in the Government's

20   eyes as well, Your Honor.

21         THE COURT:  Mr. Herrold, any objection to that?

22         MR. HERROLD:  No, Your Honor.

23         THE COURT:  In addition to P.R., are there any other

24   individuals that you're aware of that should be specifically

25   listed in that no-contact order?

1           MR. ESSLEY:  I would list, Your Honor, P.R., S.B.

2           THE COURT:  K.W.?

3           MR. ESSLEY:  K.W., T.S., L.L.  The last one I'm

4    thinking of is H. --

5           THE COURT:  I.H.?

6           MR. ESSLEY:  No.  H.T.  I.H. can be listed,

7    Your Honor, as well.  D.T., A.E.

8           THE COURT:  Mr. Herrold, any objection to that?

9           MR. HERROLD:  No, Your Honor.

10          THE COURT:  So we will include each of those.

11          Mr. Essley, will you confirm with Mr. Herrold, the

12   probation office, and the Court after the hearing that we make

13   sure that we get those correct?

14          MR. ESSLEY:  Yes, Your Honor.

15          THE COURT:  That obviously does not exclude the other

16   victims in this case.  There are many.  But because the

17   defendant had continuing contact with those and has the

18   knowledge and the means to contact them, I think specifying

19   that is good for clarity.

20          You must not view or possess any visual depiction of

21   sexually explicit conduct, and you not enter into any venue

22   where sexually explicit conduct is the primary material for

23   sale or viewing.

24          You must not frequent hotels, motels, or other

25   commercial establishments that operate temporary lodging

1    without the prior permission of the probation office.

2           You must not possess Internet-capable devices without

3    the prior approval of the probation office, and if you're

4    permitted to have such a device, you must permit third-party

5    disclosures to any employer whose device you are using.

6           Similarly, if you are allowed to possess

7    Internet-capable devices in a personal capacity, you must allow

8    for the installation of monitoring hardware or software, you

9    must pay the costs for any such materials, and you must notify

10   any others who would have access to those devices that the

11   devices are subject to monitoring or unannounced examinations,

12   as set forth in paragraph 330.

13          You must pay restitution in the amount that we have

14   stated here today.  At this point it's 24,000, to be augmented

15   by additional amounts established by the record that will be

16   held open for 60 days.

17          You must not apply for, solicit, or incur any debt

18   without first getting permission from the probation office, and

19   that is to ensure that any money available goes to that

20   restitution payment.

21          You must provide complete access to your financial

22   information to the probation office, again, in furtherance of

23   restitution.

24          You'll be subject to a search condition, and that

25   search condition can be effectuated with or without the

1    assistance of law enforcement, including the United States

2    Marshals Service.

3         Both the lifetime term of supervision and the

4    conditions I have imposed are based upon an individualized

5    assessment of this defendant's supervision needs after

6    reviewing and considering each of the relevant factors under

7    18, United States Code, Sections 3553(a) and 3563(b).

8         Mr. Herrold, any requests as to designation or

9    programming?

10        MR. HERROLD:  Your Honor, Mr. Speidel and I have

11   discussed this.  He has looked hard at where he thinks there's

12   good programming opportunities for him, and, for that reason,

13   we're going to request recommendations that are outside of kind

14   of the region.  In particular, the Marianna complex or the

15   Seagoville facility have the programming he's looking for, with

16   the theory being if they don't place him there, then they would

17   probably revert to the region where he would be closer to home

18   that gives him what he's looking for.

19        In addition --

20        THE COURT:  You said the Marianna complex or what?

21        MR. HERROLD:  Seagoville.

22        THE COURT:  And is there a specific program that you

23   want me to ask or to draw the Bureau of Prisons' attention to

24   in regards to those locations?

25        MR. HERROLD:  He's looking at -- they do have a sex

1   offender treatment program, but I think, obviously, they'll do

2   that wherever they put him, but he's looking at that and, in

3   addition, can do substance abuse treatment and vocational

4   training programs as well.

5           THE COURT:  So I will recommend the defendant be

6   designated to either the Marianna complex or the secondary one

7   you mentioned, Seagoville, and for the opportunity to

8   participate in their sex offender treatment programs, substance

9   abuse treatment programs, and vocational training.

10          Is that acceptable to the defense?

11          MR. HERROLD:  Thank you, Your Honor.

12          THE COURT:  Forfeiture?

13          MR. ESSLEY:  Yes, Your Honor.  The Government would

14  request a final order of forfeiture consistent with the

15  preliminary order that was issued at docket 52 in Case No.

16  4:22-cr-082.

17          THE COURT:  Is there a separate forfeiture in the

18  other case?

19          MR. ESSLEY:  No, Your Honor.

20          THE COURT:  And that was agreed to as part of the plea

21  agreement, Mr. Herrold?

22          MR. HERROLD:  It was, Your Honor.

23          THE COURT:  And that final judgment of forfeiture will

24  be entered here today.

25          Counts to be dismissed?

1          MR. ESSLEY:  Yes, Your Honor.  At this time the

2     Government would move to dismiss Counts 1 through 5, 7 through

3     13, and 15 through 27 of the superseding indictment in Case No.

4     4:22-cr-082.

5          THE COURT:  And that motion is granted.

6          Mr. Speidel, you do have the right to appeal the

7     sentence that I have just imposed in this case -- both of these

8     cases.  If you wish to pursue an appeal, you must file a

9     written notice of appeal within 14 days of the entry of

10    judgment.

11         Do you understand the time limit for filing a notice

12    of appeal, sir?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  In addition, if you wish to pursue an

15    appeal and you cannot afford an attorney, one can be appointed

16    to represent you.  You can also have transcripts of this or any

17    other relevant proceedings made at no cost to you in

18    furtherance of your appeal if you qualify financially.

19         Do you understand your appeal rights?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  Counsel, any matters I failed to address?

22         MR. ESSLEY:  Just one thing, Your Honor.  I believe

23    during Defendant's allocution, there was one reference to Child

24    Victim No. 18's first name.  I would request that that

25    reference be changed to her initials or Child Victim No. 18.

1           THE COURT:  Mr. Herrold?

2           MR. HERROLD:  I don't have any objection to that in

3     the transcript, Your Honor.

4           THE COURT:  Anticipatorily, because, obviously, the

5     transcripts are redacted afterwards at the request of the

6     parties, but anticipatorily I will grant your motion for

7     redaction from that first name reference to the initials that

8     have been used throughout the course of the proceeding.

9           Anything I failed to address from the perspective of

10    the defense?

11          MR. HERROLD:  I don't think so, Your Honor.

12          THE COURT:  In terms of the restitution, I would ask

13    that the parties inform the Court of any agreement that is

14    reached in that regard that -- informing all necessary parties

15    about restitution.  I do not intend to set a hearing on the

16    issue until I hear from you one way or the other that a hearing

17    is necessary.  We will keep the record open for 60 days.

18    Obviously, the sooner you all resolve that, the sooner the

19    Court can address that, and I would appreciate your attention

20    to that.

21          Anything further on behalf of the Government?

22          MR. ESSLEY:  No, Your Honor.

23          THE COURT:  On behalf of the defense?

24          MR. HERROLD:  No, Your Honor.

25          THE COURT:  The defendant is committed to the custody

1   of the United States Marshals Service for transportation to the

2   designated Bureau of Prisons facility.

3        I appreciate the participation of the victims here

4   today.  I read all of the materials that are provided to me

5   from victims.  I understand that it's difficult to provide

6   comments to the Court.  The Court wishes all of the victims in

7   this case peace and health moving forward.  This does not

8   define you.

9        Mr. Speidel, I wish you peace as well.

10        That will conclude the hearing.

11        (The sentencing hearing concluded at 1:52 p.m.)

1                          CERTIFICATE

2              I, Chelsey Wheeler, a Certified Shorthand Reporter of

3      the State of Iowa and Federal Official Realtime Court Reporter

4      in and for the United States District Court for the Southern

5      District of Iowa, do hereby certify, pursuant to Title 28,

6      United States Code, Section 753, that the foregoing is a true

7      and correct transcript of the stenographically reported

8      proceedings held in the above-titled matter and that the

9      transcript page format is in conformance with the regulation of

10     the Judicial Conference of the United States.

11             DATED this 1st day of April 2023.

12

13                      /s/*Chelsey Wheeler*

14                      Chelsey Wheeler
                        Certified Shorthand Reporter
15

16

17

18

19

20

21

22

23

24

25